KUHNS v. THE WISCONSIN, IOWA & NEBRASKA RAILWAY COMPANY.

1. **Negligence:** PLEADING: AMENDMENT: LIMITATION OF ACTION. In an action for negligence resulting in the derailment of an engine and the killing of plaintiff's intestate, an amendment, pleaded after the action would have been barred by the statute of limitations, setting up additional grounds of negligence contributing to the derailment and the consequent death, does not state a new cause of action; and a demurrer to such amendment based on the statute of limitations was properly overruled.

2. **Evidence:** MATTER ADMISSIBLE FOR ONE PURPOSE USED FOR ANOTHER: RES GESTÆ. It was a material question whether there was or was not a depression at a joint of the rails on one side of defendant's railroad track. The witnesses for plaintiff testified positively that there was such a depression, and those for defendant testified as positively that there was not. Plaintiff was then permitted to show that shortly after the overturning of the engine, alleged to have been caused by the depression, defendant's section-men, who were at the time working a short distance from the place, came upon the scene, and, after doing some work about the engine, went to the place where it was claimed the low joint was, and raised it up to a level, and tamped dirt under the ties. *Held* that this testimony was competent only as bearing upon the question whether there was in fact a depression in the track. But as the court failed to instruct the jury to consider the evidence only as bearing upon that fact, and as the record shows that the purpose of plaintiff was to treat the acts of the section-men as of the *res gestæ* (which they were not), and thus as an admission by defendant that there was a depression in the track, *held* that its admission was reversible error. (Compare *Verry v. Burlington, C. R. & M. Ry. Co.*, 47 Iowa, 549.)

*Appeal from Black Hawk District Court.*—HON. D. J. LENEHAN, Judge.

FILED, OCTOBER 26, 1888.

THIS is an action at law to recover damages for the death of Edward C. Kuhns, which was caused by the derailment of a locomotive engine upon which he was a

fireman in the employ of the defendant. There were several acts of negligence charged against the defendant, all of which were denied. A trial by jury resulted in a verdict and judgment for the plaintiff. Defendant appeals.

*Hubbard & Dawley*, for appellant.

*Boies, Husted & Boies*, for appellee.

ROTHROCK, J.—I. This is an appeal from a second trial of the cause. A former trial resulted in a verdict and judgment for the plaintiff, which, upon appeal to this court, was reversed, and the cause remanded for a new trial. 70 Iowa, 561. At the first trial of the cause the negligence charged in the petition was (1) that the track was not properly ballasted; (2) that the rails were not properly spiked to the ties; (3) that the track was rough and uneven; (4) that defendant failed to furnish a suitable engine; (5) that defendant failed to furnish appliances for turning the engine; and (6) that the engine was running backward. After the cause was remanded for a new trial, the plaintiff amended his petition by averring that, at the time of the derailment of the engine, it was running at a dangerously high rate of speed, over an imperfectly constructed and rough and uneven road, and that one of the wheels of the tender of said engine dropped into a low and dangerous place in the road-bed, and said wheel was thereby broken; by reason of which the engine and tender were thrown from the track, and the deceased was thrown under the engine, and was so injured that he soon afterwards died. This amendment was demurred to on the ground that it was a new cause of action, and was barred by the statute of limitations. The demurrer was overruled. This ruling of the court is assigned as error, and a number of authorities are cited which it is claimed support the objection. We do not think the objection is well taken. We need not set out

1. NEGLIGENCE : pleading : amendment : limitation of action.

nor review the authorities relied on. In our opinion, they do not sustain the claim made by counsel. Of course, we concede that where an amendment sets up a new cause of action, not before presented by the petition, it would be vulnerable to the objection that it is barred by the statute of limitations. But in the case at bar the cause of action is for damages alleged to have accrued to the plaintiff by reason of the negligent derailment and turning over of an engine and tender. In the original petition certain acts of negligence are specified. In the amendment certain other specifications of negligence are pleaded. But the cause of action is the same. Indeed, so far as the depression in the track is involved, it is nothing more than a more specific statement of the averment in the original petition that the track was rough and uneven. We are very clearly of opinion that the statement of additional grounds of negligence is not a new cause of action. There is no departure from the original petition in the time, place, or circumstance of the casualty which caused the death of the intestate.

II. Upon the last trial the court, by its instructions to the jury, eliminated all of the charges of negligence from the case, excepting those enumerated

2. EVIDENCE: matter admissible for one purpose used for another: res gestæ.

in the seventh paragraph of the charge, which is as follows: "Therefore, gentlemen, your inquiry will be confined to the question whether or not there was a dangerous defect in the track or road-bed at the place where the engine was thrown from the track, and whether or not the defendant was guilty of negligence in permitting such a defect to remain in the track. *Second.* Whether or not the train was being run at a dangerous rate of speed, over a dangerous defect in the track, and whether or not the condition of the track at the place of the accident, or the speed of the train at that time and place, was the sole cause of the accident and injury complained of; and to entitle the plaintiff to recover in this action it is incumbent on him to establish, by a preponderance of the credible testimony, the negligence of the defendant in one of these alleged particular acts or omissions, and

that such particular negligence caused the injury complained of." This instruction limited the negligence to the alleged dangerous defect in the track at the place where the accident occurred, and to the alleged dangerous rate of speed at which the engine was running at the time of the casualty ; and the evidence in the case was directed to these two questions. The plaintiff introduced evidence tending to show that at the place where the wheels left the track there was a depression, in a joint on one side of the track, of from one and a half to two or three inches ; and the theory was that, as the rail opposite was on a level, the dropping of the hindwheel of the tender into the depression caused a lurch of the tender sidewise, which broke the flange of the wheel ; and that the wheel then climbed upon and over the rail, and caused the accident. The defendant denied that there was any appreciable depression in the track at or near the place or derailment, but admitted that the tender and engine left the track by reason of the breaking of the flange of the wheel ; but said breakage was without the fault or negligence of the defendant, for the reason that it was caused by a latent defect or crack in the flange not discoverable by ordinary care and prudence in making an inspection of the wheel. Upon this last point the court instructed the jury as follows : "There is undisputed evidence before you tending to show that there was a latent defect or flaw in the wheel in question which was unknown to and undiscoverable by the defendant, by use of the customary methods of inspection, and in the exercise of ordinary care and caution on its part. If you find from the evidence that the wheel in which said defect existed was broken at the time of the accident by reason of its defective condition alone, and not by its coming in contact with the defective joint, claimed by plaintiff to have caused the accident, then your verdict should be for the defendant. If, upon a fair consideration of all the evidence in the case, you are unable to determine, by a preponderance of the credible testimony, that the wheel in question was broken by reason of the defective

Kuhns v. The Wisconsin, I. & N. Ry. Co.

condition of the track and road-bed at the place where the accident occurred, then your verdict should be for defendant, as the burden of proof is on the plaintiff to establish the cause of the accident resulting in his injury." The evidence as to whether there was a defective or low and dangerous joint in the track is in direct conflict. The witnesses in the case testified upon the one side that there was a low joint within two or three feet from the place where the wheel mounted the rail, and that it climbed upon the rail as it came up from the depression at the joint. The witnesses for the defendant testified as positively that there was no appreciable depression at the joint. All of these witnesses made personal examination of the track, and testify directly in conflict as to this physical fact. It appears from the record that there was a gang of section-men at work on the track a mile or a mile and a half from the place where the accident happened. The train passed the place where the section-men were at work; and, after the engine and tender turned over, the section-men discovered that something was wrong, and they put their hand-car on the track, and went down to the place of the accident. There is positive testimony in behalf of eye-witnesses that, after doing some work about the engine, some of the section-men went to the place where it is claimed the low joint was, and raised it up to a level, and tamped dirt under the ties. This is positively denied by the defendant's witnesses. It will be observed that, in view of this conflict in the evidence, we cannot interfere with a determination of these two disputed questions in the case.

But the evidence as to the raising of the joint was strenuously objected to by the defendant, and it is urged in argument in this court that it was wholly incompetent and improper on any ground which may be claimed to sustain it. As we have said, there was a conflict in the evidence as to whether there was a low joint. The evidence that the joint was raised soon after the accident was competent, as bearing upon the question whether the joint was defective, or rather sunk down, so as to be

dangerous. It was in direct corroboration of the witnesses who so testified. Upon the same principle, if a witness should testify that a horse was sixteen hands high, he might also properly testify that he knew it because he saw the height of the horse measured. And a witness might well say that he knew an object was in a certain place because he saw it removed to that place. The evidence was not admissible as tending to show an admission by the defendant that the track was out of repair. This is so well settled in this state that we need but to refer to the cases of *Cramer v. City of Burlington*, 45 Iowa, 627, and *Hudson v. Chicago & N. W. Ry. Co.*, 59 Iowa, 581. But the defendant contends that the evidence was introduced and used as of the *res gestæ*. The court did not in its instructions direct the jury that the evidence should be considered as bearing only on the question as to whether the track was dangerously defective as a matter of fact; but the jury were left at liberty to consider the evidence in question as an admission or confession of the defendant that this was the cause of the accident. The evidence being competent as bearing upon the question as to whether there was any depression in the track, as the defendant did not ask an instruction limiting its effect, we might, if this were all, hold that there was. no error in allowing it to go to the jury. But the record shows that the plaintiff intended to use it as of the *res gestæ*. The defendant introduced the section-boss as a witness, who, in his examination in chief, testified, among other things, that he did not raise the track soon after the accident, and that it was not sunk down. On his cross-examination the plaintiff proved by the witness that he came to the scene of the accident as soon as he could; that the distance was a mile or a mile and a quarter; that a hand-car cannot be run fifteen or twenty miles an hour; and that the usual rate of running such a car is three or four miles an hour. This evidence was objected to as incompetent and immaterial, and not cross-examination. In rebutting the plaintiff introduced evidence tending to show that a hand-car can be run fifteen miles an hour, and that as

men usually work them they are run at seven or eight miles an hour. This evidence was objected to as incompetent, and not proper rebutting evidence. It is quite plain that the evidence of the defendant's witnesses was not proper cross-examination ; and, as we view the case, it was not a material fact as to how soon after the accident the section-men arrived at the wreck. The plaintiff then, over the objection of the defendant, was allowed to interrogate the witness upon merely collateral facts, and then to contradict him by calling another witness in rebuttal. It is a fundamental rule that this cannot be done. It is doubtful, however, whether the judgment should be reversed on this ground alone. But the evident purpose was to show that the section-men were on the ground, and repaired the track, so soon after the accident that their act, if they did raise the track, was of the *res gestæ*, and therefore in the nature of an admission. In section 108, 1 Greenl. Ev., it is said : "There are other declarations which are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation. The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstances, and in its turn becomes the prolific parent of others ; and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the *res gestæ*, may always be shown to the jury along with the principal fact, and their admissibility is determined by the judge according to the degree of their relation to that fact, and in the exercise of his sound discretion ; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with

it as to illustrate its character." In the absence, from necessity, of any definite rule to determine what is or is not part of the *res gestœ*, many decisions may be found, of the most respectable courts, which seem to be in conflict. There are two tests, however, which are wholly wanting in this case, and without which the repair of the track cannot be held to be of the *res gestœ*. The first and most important is the want of connection with the principal fact under investigation. After the accident, and after the section-men had given such attention as was required about the train, they turned their attention to the repair of the track. This was no more part of the transaction than their act would have been if they had given their attention to raising the engine and tender to an upright position. In the second place, the act was no part of an impending transaction. It was after the whole occurrence had transpired, and the section-men were not connected with the transaction in such a way as to be part of it, so to speak. There is not as much ground for holding the repair of the track part of the transaction in this case as there would have been to have held that the declaration of the car inspector in *Verry v. Burlington, C. R. & M. Ry. Co.*, 47 Iowa, 549, was admissible as of the *res gestœ*. Our conclusion is that the judgment must be reversed for the admission of the evidence of the repair of the track in connection with the evidence last above alluded to. We discover no other reversible error in the record.          REVERSED.