FRED ANNAKER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

<table>
<tr><td>81</td><td>267</td></tr>
<tr><td>120</td><td>115</td></tr>
</table>

1. Negligence: EVIDENCE. The plaintiff alleged in his petition that the defendant carelessly and negligently caused the rear end of a freight train, propelled by an engine, to pass rapidly over its tracks while approaching a street crossing, whereby he and his horses and wagon were injured. In support of these allegations, the opinions of witnesses were received in evidence as to the speed of the train at the time, and there was evidence as to the time the train started, the distance it traveled, the force with which it struck the wagon and horses, and the distance it moved after striking them. *Held*, that negligence was sufficiently charged in the petition, and that the evidence was such as to warrant the submission of the question to the jury.

2. ———: RAILROADS: STREET CROSSING: FLAGMAN. The knowledge of a traveler over a railroad at a street crossing that no flagman is stationed there at such hour, and his dependence, for that reason, upon his own sight and hearing to discover the approach of trains, will not excuse the railroad company for its negligence in not keeping a flagman stationed at the crossing at such hour.

3. ———: ———: ———: ———. Whether the failure of a railway company to keep a flagman on duty at a street crossing in a city, over which its road passes, at a given hour in the day, constitutes negligence, is a question to be determined from a consideration of all the circumstances of the particular case.

4. ———: ———: ———: SIGNALS. The defendant's witnesses testified that signal lights were displayed at the crossing, and the bell on the engine was rung as it approached the same. The plaintiff, on the other hand, testified that he did not see the lights nor hear the bell. *Held*, that if the plaintiff was in a position to hear the bell if rung, and see the lights if displayed, and he was listening and looking for that purpose, there was such a conflict in the testimony as to require the submission of the question to the jury.

5. ———: INSTRUCTIONS. It is proper for a court to refuse to give an instruction to a jury, which is not applicable to the case under the evidence, though correctly stating a rule of law.

6.    —— : DAMAGES. The plaintiff testified that he had paid a phy-
sician named five dollars, while the physician testified that he did
not know whether the money received was for services rendered
the plaintiff or other members of his family. *Held*, that whether
the sum named was paid by plaintiff on account of the injury sus-
tained by him through defendant's negligence, was a question for
the jury to decide.

*Appeal from Polk District Court.* — HON. MARCUS
KAVANAGH, Judge.

### WEDNESDAY, OCTOBER 22, 1890.

ACTION to recover damages for the alleged negli-
gence of the defendant's employes in backing a train of
cars, propelled by an engine, against the plaintiff's
wagon and horses at a street crossing, whereby they and
the plaintiff were injured. The case was tried to a jury,
and a verdict returned in favor of the plaintiff for
twenty-one hundred and seventy-five dollars. Defend-
ant's motion for new trial was overruled, and judgment
entered on the verdict. The defendant appeals.

*Thomas S. Wright* and *Cummins & Wright*, for
appellant.

*Cole, McVey & Clark*, for appellee.

GIVEN, J.—I. Appellant's first contention is that
the court erred in submitting as an element of negligence
1. NEGLIGENCE: the speed of the train, because not charged
evidence. in the petition, nor included in the state-
ment of the issues made by the court, and because there
was no evidence upon which to submit the question.
The allegation in the petition is that "the defendant
carelessly and negligently caused the rear end of a
freight train, propelled by an engine, to approach a
street crossing from the east, and then and there to
pass rapidly over the south one of the tracks of defend-
ant." In stating the issues, the court followed sub-
stantially the language of the petition. The exigencies
of the service require that trains of cars be frequently

propelled backwards.   To say that a train of cars has
been so propelled does not charge negligence.   Whether
to so move a train is negligence must depend upon the
circumstances.   Omit what is stated as to the speed of
the train, and you have no circumstance charging neg-
ligence.   It would not be negligence for the defendant
to cause the rear end of a freight train, propelled by an
engine, to approach a street crossing.   It is the fact of
so approaching it, and passing ''rapidly over,'' that
constitutes the negligence charged in this part of the
petition.   Such being the construction, we hold that
the court properly stated the issue.

There were two classes of evidence relating to the
speed of the train,—the opinion of the witnesses as to
its speed, and evidence as to the time it started, the
distance it traveled, and force with which it struck the
wagon and horses, and the distance it moved after
striking them.   Under the state of the pleadings and
proofs, it was the duty of the court to submit this ques-
tion to the jury.

II.   The appellant complains of the refusal of the
court to give an instruction eliminating from the case
the claim of negligence, based upon the absence of a flagman, for the same reasons as urged for withholding from the jury any
inquiry as to the speed of the train.   It is charged in the
petition that the defendant neglected to have a watch-
man at the street crossing to give warning of the
approach of said train.   Here again the court followed
the language of the petition in stating the issue.   It
appears without controversy that this accident occurred
on the morning of December 26, 1887, a few minutes
after six o'clock ; that it was a dark, foggy morning ; that
no watchman or flagman was then on duty at the cross-
ing ; that defendant's flagman did not come on duty at
that crossing until seven o'clock in the morning ; that
there was considerable travel over the crossing as early
as six o'clock ; and that several trains went out from
defendant's depot, near by, over said crossing about six
o'clock each morning.   The plaintiff states that he knew

2. ——: rail-
roads : street
crossing: flag-
man.

there was no watchman there at that hour. and appellant's contention is that, as he knew there was no watchman there, and did not depend upon one, but looked for himself, and, by so looking, he could see all that the watchman would have seen, the presence of a watchman would have been no protection; and hence his absence was not the cause of the injury. The protection afforded by the presence of a vigilant watchman at a traveled street crossing is quite different from that afforded by a caution board. The caution board says to the traveler, "Here is a railway track, and you should look out for trains that may move upon it," while the flagman looks for the coming train, and warns the traveler of its approach. The traveler knowing of the presence of a railway may have his view obstructed as he approaches it, but the watchman may go out upon the track, where he can command the most extended view. This case affords an illustration. The testimony shows that there were several tracks along Vine street, running east and west, over which the plaintiff was crossing to the south; that the train was being propelled on the south track; and that there was one or more cars east of the crossing, on one of the northerly tracks, that may have obstructed plaintiff's view of the train, while it would have been in full view of a watchman standing in the middle of the street. It is alleged that no signals were given of the approach of the train by displaying lights, or sounding the bell; hence it is urged that a watchman would not have been aware of its approach any more than the plaintiff was; therefore, the absence of a watchman was not the proximate cause of injury. There is testimony tending to show that this train was passing in accordance with the common custom,— in other words that it was regularly moved in that direction each morning; and, therefore, its approach at that hour would have been, or should have been, known to a watchman. We think there was no error in refusing the defendant's instruction eliminating from the case the claim of negligence, based upon the absence of a watchman.

III.  Appellant contends that it was error to leave it to the jury to determine whether, under the circumstances, it was negligence not to have a flagman at the crossing.  It is not negligence *per se* for a railway company to omit to keep a flagman at every street or highway crossing, at any given hour of the day or night.  Whether such omission is negligence depends upon the circumstances,—such as the frequency with which trains are passing, the amount of travel, the opportunities, or want of opportunities, for travelers observing the approach of trains, and the like.  It is clearly a question of fact as to whether the defendant was negligent in not having a flagman at this crossing at the time of this accident, and that question was properly submitted to the jury.

*3. The same.*

IV.  The appellant makes the further contention, that the court erred in submitting to the jury the issue of signals and lights, because there was no evidence upon which to submit it.  A number of witnesses testified that lights were displayed and the bell rung, while the plaintiff testifies that he did not hear the bell.  It is contended that this statement does not create a conflict with the evidence of defendant's witnesses that the bell was rung and lights displayed.  It is true that for plaintiff to say that he did not hear a bell, or see a light, does not create a conflict with one who says he did; but, if it appears that the plaintiff was in position to hear the bell if rung, and see the lights if displayed, and that he was listening and looking for that purpose, then there is a conflict. There was testimony tending to show that even though lights were displayed, as testified to by the defendant's witnesses, yet that there were intervening obstacles that would have prevented the plaintiff from seeing them from his position in crossing the track.  Under the state of the testimony, there was no error in submitting this issue to the jury.

*4. ——: ——: ——: signals.*

V.  The defendant asked an instruction as follows: "In the consideration of the evidence of equally credible

**5. ——: instructions.** witnesses, affirmative testimony, as that a bell was rung, is entitled to more weight than negative testimony, as that a bell or whistle was not heard." Appellant complains of the refusal to give this instruction. That it clearly states the law cannot be questioned, and would be applicable where the negative testimony was simply as stated,—that is, that a bell or whistle was not heard,—but not applicable where they were listened for within hearing distance, and not heard. The attention of the jury was sufficiently directed to this matter in the third paragraph of the charge, as to how they were to weigh the testimony, and especially in the direction that they were to consider the witness' means of knowledge concerning the facts about which he testified.

VI. The only remaining error assigned and urged in argument is, that the court erred in submitting to **6. ——: damages.** the jury, as an element of damage, the claim for medical expenses, because there was no evidence that plaintiff incurred any such expense on account of the accident. Appellant testified to paying Dr. Priestley five dollars, while Dr. Priestley testified that he did not know whether the items were for services rendered to plaintiff, or to some other members of his family. It was a question under the testimony whether the five dollars paid to Dr. Priestley was on account of plaintiff's injury or not, and that was a question for the jury.

Our conclusion is that the judgment of the district court should be AFFIRMED.