Matilda See v. The Wabash Railroad Company, Appellant.

Railroads: CROSSINGS: APPROACHES. The approach to a railway
1    crossing is a part thereof and is included in the statutory duty of a company to erect and maintain a good and sufficient crossing.

Contributory Negligence: BURDEN OF PROOF. Where a statutory
2    duty is imposed on a railway company to maintain a sufficient crossing, the burden of proof is on the company to show contributory negligence of one injured by a defective crossing.

Defective Crossing: DUTY TO TAKE ANOTHER ROAD: INSTRUCTION.
3    An instruction that if plaintiff had knowledge of the dangerous and defective condition of the crossing, but had reasonable

ground for believing and did believe that she could cross with safety by the exercise of due care, and did not and was not bound to believe as a reasonably prudent person that it was unsafe to make the passage she was under no obligation to take another road, was correct.

Evidence: REPAIR OF CROSSING. Evidence of repair of a crossing subsequent to an injury is inadmissible on the question of its defective condition at the time of the injury or the negligence of the company, and an objection thereto is not waived by the offer of testimony in contradiction.

Additional Abstract: MOTION TO STRIKE. Where an additional abstract simply denies the correctness of the original, the denial being followed by the entire evidence of a witness with no reference to the original abstract, without pointing out the errors complained of, it will be stricken out.

*Appeal from Appanoose District Court.*—HON. M. A. ROBERTS, Judge.

WEDNESDAY, APRIL 6, 1904.

SUIT to recover damages for a personal injury. There was a trial to a jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Fee & Fee* for appellant.

*C. F. Howell, W. H. Sanders* and *W. R. C. Kendrick* for appellee.

SHERWIN, J.—The plaintiff was injured in Missouri, where a statute was in force at the time, requiring railroad companies to construct and maintain good and sufficient crossings where their railways cross public roads or streets. The character of the crossing necessary was specified, and it provided that upon a failure to construct or maintain such crossings, the municipal authorities or the parties having legal control of the roads or streets should notify the company of the necessity of the construction of the crossing, and, if there was a failure to construct the same within thirty days from the service of the notice, the parties having charge of the street or road might construct it at the expense of the delinquent company. The same act also made the railway com-

pany liable for all damages resulting from such failure or neglect to construct the crossing.

This statute absolutely required the companies to construct the specified crossings wherever their roads crossed public streets or roads, and made them absolutely liable for a failure to do so. The provision for notice when there had been such failure, and for the construction thereof by the municipal or other authorities, was for the protection and accommodation of the public only, and did not affect or lessen the duty or liability of the delinquent company. *Lincoln v. St. Louis, I. M. & S. Ry. Co.,* 75 Mo. 27. That an approach

1. CROSSINGS: approaches.

to a crossing, situated on the company's right of way, is a part of the crossing, can hardly be questioned. *Farley v. C., R. I. & P. Ry. Co.,* 42 Iowa, 234; *City of Kansas v. K. C. Belt Ry. Co.,* 102 Mo., 633 (14 S. W. Rep. 808, 10 L. R. A. 851); *Chesapeake, O. & S. W. R. Co. v. Dyer County,* 87 Tenn., 712 (11 S. W. Rep. 943). And that the duty to erect a crossing would necessarily imply a duty to maintain it cannot, we think, be seriously questioned. The statute under consideration, however, expressly says that it shall be maintained by the company.

The twenty-fourth ground of the motion for a new trial was not based upon the statute in question, and there was no error in overruling it for this reason alone. What we have

2 CONTRIBU-TORY negli-gence: bur-den of proof.

already said disposes of the contention that the instructions based upon the statute in question were wrong. The court properly instructed that the burden of proof was upon the defendant to show contributory negligence on the part of the plaintiff. This is true under any view which may be taken of the case. If it be held that the procedure of this state is to govern, it is settled by our own cases under a similar statute. *McKelvy v. B., C. R. & N. Ry. C.,* 84 Iowa, 455; *Reeves v. Dubuque & S. C. R. Co,.* 92 Iowa, 32. And the rule is the same in Missouri. *Thompson v. Railroad,* 51 Mo., 190 (11 Am. Rep. 443); *Petty v. H. & St. J. Ry. Co.,* 88 Mo., 306; *Parsons v. Mo. P. Ry. Co.,* 94 Mo., 286 (6 S. W. Rep. 464.)

Practically all of the thirty paragraphs of the court's instructions are challenged, and it is obvious that it would be impracticable to attempt a discussion of each separately, and we shall specifically notice but one in addition to those disposed of by what has already been said.

The injury complained of was received while driving a team over the crossing and on to a bridge constituting a part thereof. The team, and the wagon in which the plaintiff was at the time, went over the bank at the end of the bridge into a ravine. It was claimed by the appellant that the approach had been in its then condition for a long time, and that the plaintiff was aware of such condition. The way was icy and slippery on the night of the accident, and the night dark, and the defendant offered evidence tending to show that the plaintiff might have traveled another and safe road to reach her home. The court instructed on this point, and told the jury that "if the plaintiff had knowledge of the dangerous and defective condition of the crossing, but had reasonable grounds for believing and did in fact believe that she might pass over it in safety in the exercise of ordinary care, and did not believe and was not bound to believe, as a reasonably prudent person, that it was imprudent to undertake its passage, she was under no obligation to take another road." This instruction states the rule which has often been held to obtain in cases of defective ways. *Graham v. Town of Oxford,* 105 Iowa, 705; *Nichols v. Town of Laurens,* 96 Iowa, 388; *Kendall v. City of Albia,* 73 Iowa, 241.

3. DEFECTIVE crossing: duty to take another road: instruction.

We find no other prejudicial error in the instructions when considered as a whole, as they must be under the well-settled rule. There are expressions in some of them which, considered separately and distinct from the subject-matter being treated, might constitute error, but as an entirety they fairly and fully submitted the case to the jury. Nor do we think there was error in refusing to give the instructions asked. When material and correct, they were embodied in those given.

We shall only notice such rulings on the introduction of evidence as we think erroneous and prejudicial. Many witnesses were permitted to testify to the repair of the crossing in question after the injury. This testimony was clearly incompetent, for its evident purpose and intent was to show its unsafe condition at the time of the accident, and the defendant's negligence. The force of this objection is sought to be broken by the argument that the appellant did not make timely objections to the testimony, and that it afterwards offered evidence contradicting it. But we find objections made to the testimony—fully as many as were necessary to preserve a record of the error—and that they were overruled. It was not a waiver of such objections to offer testimony contradicting the statements. The defendant had done all that it could do to protect its rights, and was either compelled to meet the incompetent evidence, or let it go to the jury as true. We think it had the right to disprove it if possible, without being held to have waived the ruling by so doing.

4. EVIDENCE;
repair of
crossing.

There was error in receiving the testimony of Singleton as to what the wagon wheel would have done under certain conditions. It was his conclusion only. The testimony of the witnesses Seamster, Dotser, and Jumper,. given on a former trial, and read from the shorthand notes of such trial, was not objected to. Furthermore, it is said that it went in by agreement on the trial, which does not appear of record.

We have given the evidence careful consideration, and we cannot say that it does not furnish sufficient support for the verdict.

It is urged that the case should be reversed on account of the misconduct of counsel in the cross-examination of witnesses and in argument to the jury. Were it necessary, we would not hesitate to plant our decision on these grounds alone, although much of the objectionable matter injected into the case, both in the cross-examination of witnesses and in argument, was not objected to. But this necessity not existing, pride in the profession deters us from setting out the

objectionable matter or discussing it in detail. The record presents a much more flagrant case than was before us in either *Welch v. Union Cent. Life Ins. Co.,* 117 Iowa, 394, or *Sullivan v. Chicago, R. I. & P. Ry. Co.,* 119 Iowa, 464, and it is strange that courts find it necessary in this enlightened age to deal with such questions. Furthermore, much of the time of the trial court was consumed by counsel in crimination and recrimination which would have been out of place, to say the least, in any tribunal, legal or otherwise. It was also necessary for the trial court to threaten summary proceedings to protect itself against the appellee's charges of unfairness. That proceedings of this kind more nearly represent a farce than a legal investigation of the relative rights of the parties is too manifest for discussion. We leave the unpleasant subject with the hope and expectation that we shall not again be called upon to consider it.

A motion to strike the appellee's additional abstract was submitted with the case. The appellant's original abstract of the evidence, and of the excerpts from the appellee's arguments to the jury, covers nearly four hundred pages. The appellee's additional abstract makes a book of eighty-eight. It denies the correctness of the appellant's abstract, and says that the appellant's abstract contains many errors, but that they are not specifically pointed out, and that the appellee is content to refer to one error specifically. This was done, but nothing more. The rule requires the denial to be as specific as the case will permit, and is not complied with by following the bare denial with what purports to be the entire evidence of a witness, and this without a reference to the original abstract. The reporter's transcript of the case covers one thousand two hundred and thirty-six pages, and it is very evident that we cannot read it through, in connection with the abstracts, for the purpose of determining which abstract is correct.

5. ADDITIONAL abstract; motion to strike.

The motion to strike is sustained, and, for the reasons pointed out, the case is REVERSED.