CHARLES FITTER, Appellee, v. THE IOWA TELEPHONE COMPANY, Appellant.

**Master and servant: NEGLIGENCE: EVIDENCE.** Evidence of the
1  method of performing a service, adopted subsequent to an injury to a workman, is not competent to show that the first method adopted was negligent.

**Negligence: RES GESTAE.** Evidence of negligence, which does not
2  serve to discover the immediate cause or explain the manner of the accident, is not admissible as part of the *res gestae.*

*Appeal from Des Moines District Court.*— HON. W. S.
WITHROW, Judge.

SATURDAY, FEBRUARY 10, 1906.

ACTION to recover damages for a personal injury.
Briefly stated, the circumstances out of which the accident
resulting in such injury arose were these:   The defendant
was engaged in constructing a telephone line in Burlington,
this state.   The work was in charge of a superintendent
named Haney, to whom plaintiff applied for work, and by
whom he was employed and assigned to assist the men en-
gaged in digging holes in which to set the telephone poles.
A few days after plaintiff's employment began a wagon was
driven up on which were two poles, each about sixty feet
in length and about fourteen inches in diameter at the butt.
The wagon in use was an ordinary farm wagon, lengthened
out for the instant purpose, and the poles were loaded with
the butts forward.   One Shane, who was employed with
the hole digging gang, called to plaintiff and others to go
with him and assist the " polemen," as they were called, in
unloading the poles.   The unloading was done under the
direction of one of the polemen named Riddle.   The butt
end of one pole was lifted off to the ground and swung
around so that the upper portion thereof rested against the
other pole.   Thereupon Shane remained at the butt, and the
others, including Riddle and plaintiff, went to the opposite
side of the wagon and attempted with their hands to push
or slide the pole along the surface of the one remaining
and upon which it rested; the apparent intention being,
when lowered to the rear portion of the wagon, to lift it over
the hind wheel, and so carry it to the ground.   As the pole
was started, Riddle called to the men to hold on, as the pole
would break if allowed to fall.   It seems that both poles
had been peeled, and the pole remaining on the wagon was
wet.   Suddenly the pole being handled escaped from the

control of the men; some one called " Look out!" and all
but the plaintiff let go. The pole slid quickly to the wagon,
and as it went down plaintiff's arm was caught between
the two poles, and the bones of his wrist fractured, entail-
ing a permanent injury. The case was tried to a jury,
and from a verdict and judgment in favor of plaintiff, the
defendant appeals.— *Reversed.*

*Power & Power,* for appellant.

*A. M. Antrobus* and *F. E. Thompson,* for appellee.

BISHOP, J.— The grounds of negligence charged in-
volve the manner or method adopted to accomplish the work
of unloading the pole. And, among other things, it is said

1. MASTER AND
SERVANT:
negligence:
evidence.

that an insufficient number of men were pro-
vided to do the work in the manner in which
it was attempted to be done. One Bean, a
witness for plaintiff, after having detailed the circumstances
of the accident, was thus interrogated: " Q. For the pur-
pose of showing there wasn't a sufficient number of men to
unload the pole with safety to those engaged in unloading it,
I will ask you this question: After Fitter was hurt, how
did they unload that pole — right immediately afterward?
(Objected to and overruled.) A. The small end of the pole
was pried up, and the team was backed up until it was light
enough for what men there were there to unload it. The
wagon was uncoupled, and two or three men got behind the
small end and raised up and then pulled the wagon out."
Another witness, one Snyder, also detailed the circumstances
of the accident, and was then asked: " Q. Now, imme-
diately after the pole fell down, how did they unload it?
(Objected to and overruled.) A. They uncoupled the
wagon; lifted up the front end, and pulled the front wheels
out; and then went to the back end and lifted it up and run
the back end out." Snyder also testifies that Haney, the

superintendent of the work, who was not on the ground when the work of unloading began, but came up just as the accident happened, took charge following the accident, and thereafter the work was done under his personal direction.

We think the admission of the testimony of the witnesses named as to the method of doing the work adopted subsequent to the accident was error. It was wholly incompetent for the purpose of proving that the method first adopted, and in connection with which the accident occurred, was negligent. And there was no other phase of the case to which it could have been addressed. It has so often been held that evidence of repairs subsequently made, or of a change in the method of doing work subsequently adopted, cannot be introduced to support a charge of negligence predicated upon the conditions existing at the time of the accident, that we need do no more than cite some of the cases. *Hudson v. Railway,* 59 Iowa, 584; *Kuhns v. Railway,* 76 Iowa, 74; *Beard* v. *Guild,* 107 Iowa, 479; *Frohs v. Dubuque,* 109 Iowa, 220; *Motey* v. *Pickle, etc., Co.,* 74 Fed. 159, (20 C. C. A. 366).

Counsel for appellant seem to think that the evidence was admissible as part of the *res gestœ.* But that cannot be: Nothing can be said to be included in the *res gestœ* except those matters which properly speaking enter into the accident — which serve to discover its immediate cause or explain the particular manner of its happening. Here what was done subsequently had no relation to the accident as it happened; the evidence relative thereto disclosed no more than that, following the accident, an independent and wholly voluntary course of proceeding was adopted. And the interrogatory as propounded to Bean was not saved by the statement of purpose included. In the very nature of things, the subsequent method adopted under direction of Haney could not have the effect to throw light upon the question of the sufficiency in point of number of the men employed in the first method.

2. NEGLIGENCE: *res gestœ.*

That the testimony as thus introduced was prejudicial must be manifest. It may readily have been accepted by the jury as a demonstration that, if Riddle had adopted the easy method employed by Haney, the accident could not have happened; accordingly that there was negligence.

Many other errors occurring on the trial and entering into the judgment are contended for. As all such are based upon the state of the evidence instantly appearing, and as the record upon a retrial may not be the same in all respects, we need not extend this opinion by entering upon a discussion thereof. For the error pointed out the judgment must be reversed, and the cause remanded for a new trial.

*Reversed.*