ROY R. HAMMARMEISTER, appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY and WILLIAM P. BRENNAN, appellees.

No. 50673.

(Reported in 117 N.W.2d 463)

OCTOBER 16, 1962.

Max Putnam of Putnam, Putnam & Putnam and John Sweeney, all of Des Moines, and Robert Buckmaster of Beecher, . Buckmaster, Beecher & Lindeman, all of Waterloo, for appellant.

L. J. Cohrt and Eldon McCann of Swisher, Cohrt, Swisher, Finch & McCann, all of Waterloo, for appellees.

PETERSON, J.—On February 17, 1958, plaintiff was driving a 1954 Ford Tandem north on what is known as the Coalville Road, two miles east and two miles south of Fort Dodge. Defendant's main line from Chicago to Sioux City runs east and west in that area. Plaintiff's truck, weighing 17 ton, with its load, struck the side of defendant's two Diesel engines as the train was crossing the road. Defendant suffered heavy damage as to its equipment, the front of plaintiff's truck was demolished, and plaintiff received serious bodily injuries. Plaintiff sued the railroad company and the engineer for damages. The case was submitted to the jury, which returned a verdict for defendants. Plaintiff appealed.

Appellant assigns eight errors relied upon for reversal. He alleges the court erred: 1. In failing to submit to the jury the issue of defendants' negligence for failure to have flashing lights or a mechanical warning device at the crossing. 2. In failing to admit in evidence Exhibit HH, which was a photograph of a signal light installed at this crossing about two years after the accident and shortly prior to the trial. 3. In failing to submit to the jury an issue of defendants' negligence by reason of the train crossing the road at a high rate of speed. 4. In giving Instructions Nos. 12, 13 and 14 and failing to give plaintiff's Requested Instructions Nos. 2 and 3, pertaining to the same subject matter. 5. In giving Instruction No. 13, which pertained to contributory negligence, and refusing to give

plaintiff's Requested Instruction No. 1, pertaining to the same subject. 6. In failing to submit to the jury a specification of negligence as to adequate warning of the approach of the train at the crossing involved. 7. In giving Instruction No. 22, pertaining to the evidence of Mr. Andy Hoover, the photographer, as to the signal mechanism placed at the crossing shortly prior to the trial of the case. 8. In overruling plaintiff's motion for new trial.

The important assignments of error are Nos. 1, 2 and 3.

I. Plaintiff was 32 years of age. He was employed as a truck driver for Iowa Lumber Company of Iowa Falls. He testified he had worked for them since 1946. He left Iowa Falls about 5:10 a.m., on the date of the accident and traveled south on the Coalville Road to a point which was about 800 feet south of defendant's crossing. He then turned west and traveled about a mile to a plant known as the "Best Wall Gypsum Company" for his load.

After loading he drove back east to the Coalville Road, which was blacktopped. The day was clear and very cold; 18 degrees below zero. The accident happened about 9:30 in the morning. His load was so heavy he was driving in second gear at a rate of 12 to 15 miles per hour.

Plaintiff's first observation of defendant's track was at a point 410 feet south of the railroad crossing. At that point he looked in a northeasterly direction and could clearly see the track from the crossing to a point 1700 feet east. He testified he saw no train. He was familiar with the road and the crossing, having driven over it about once a month for eight years. He again looked to the right when he was approximately 75 or 80 feet from the crossing. He testified he only looked up the track at that time a distance of someplace between three and four hundred feet. He again saw no train. He testified there was nothing that interfered with his vision as far east as a shed near the railroad track 1700 feet from the crossing. About 350 feet before reaching the crossing he looked north on the Coalville Road a half mile, and there was no traffic approaching.

The fields to the east of the road were clear and barren. There had been beans but everything had been harvested. The

surface of the road was dry. There was no fog nor snow. He testified that there was nothing that diverted his attention from driving and making his observations. He did not slow up but kept driving at his speed of 12 to 15 miles per hour. The train had two engines. His truck struck the rear part of the lead engine and front part of second engine. He testified he heard no bell nor whistle.

Paul Starns was a co-employee. He also had come that morning for a load of material and was driving about 100 feet behind plaintiff. He testified plaintiff was traveling from 12 to 15 miles per hour. He also said he did not hear the bell or whistle of the train, although he saw the train coming when it was about 300 feet east of the crossing. He testified the speed of the train was between 75 and 90 miles per hour.

In looking northeast from the mark 410 feet south of the crossing it appeared without question the whole terrain was level except the track itself was a little higher than the field.

Mr. Hoover, a photographer, testified for defendants. He identified many photographs as to the scene. Some of them were taken a few days before the trial of the case in September 1960.

The only other witnesses for defendants were the defendant engineer and three trainmen. Their testimony as to what conditions they could observe was identical with plaintiff and his witness Starns except they testified the train was going approximately 55 miles per hour.

Mr. Harm DeBerg, the fireman, was in the seat on the left side of the lead engine. He testified he saw the truck as it was coming north from the farm buildings about 400 feet south of the crossing. It maintained a steady speed and it was only when it reached about 30 feet from the crossing that he realized from plaintiff's actions he was not going to stop. He then yelled to the engineer who was on the right side of the lead engine "they are going to hit us." At that instant plaintiff hit.

The impact of plaintiff's truck on the train was such that the air brake line broke, and the train was about 1500 feet past the crossing before it rolled to a stop.

II. The question of the duty and liability of a railroad company when it transverses country highways or city or town

streets is as old as the history of railroading in Iowa. Throughout many years the general principle adopted by our courts has been the same. As to the requirement of installing automatic crossing bells or other signals warning of the approach of a train, the rule has always been, and is now, that to justify such equipment the crossing must be more than ordinarily dangerous. It is only where the ordinary statutory signals are insufficient that additional warning is required.

The ordinary statutory requirements are: 1. Placing the crossbuck warning on the road near the crossing, section 478.1, Code of Iowa. 2. Requirements with reference to use of bell and whistle by any train approaching the crossing, section 478.19, Code of Iowa.

Our judicial history is replete with many crossing cases similar to the case at bar. We will cite a few, where the facts are somewhat analogous to the instant case: Annaker v. Chicago, R. I. & P. R. Co., 81 Iowa 267, 271, 47 N.W. 68, 69; Glanville v. Chicago, R. I. & P. R. Co., 190 Iowa 174, 180 N.W. 152, 155; Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 243 N.W. 597, 599; O'Brien v. Chicago, R. I. & P. R. Co., 203 Iowa 1301, 214 N.W. 608, 609; Hitchcock v. Iowa Southern Utilities Co., 233 Iowa 301, 6 N.W.2d 29; Wickman v. Illinois Central R. Co., 253 Iowa 912, 114 N.W.2d 627.

The early case of Annaker v. Chicago, R. I. & P. R. Co., supra involved a traveler crossing a railway track one dark foggy morning in December 1887.

The court held that under certain conditions the case was for the jury. The important matter in the case is that it expresses the position of this court at that early date. It is still a general principle of this court, seventy-five years later. "It is not negligence per se for a railway company to omit to keep a flagman at every street or highway crossing, at any given hour of the day or night. Whether such omission is negligence depends upon the circumstances—such as the frequency with which trains are passing, the amount of travel, the opportunities, or want of opportunities, for travelers observing the approach of trains, and the like."

The case of Glanville v. Chicago, R. I. & P. R. Co., supra,

has some features similar to the instant case, except the accident happened in a town instead of in the country. The second allegation of error in the case was: "That the evidence was insufficient to go to the jury on the issue as to whether defendant was negligent in failing to install an electric signaling device or maintain a watchman at the Mill Street crossing."

The question is discussed at some length in the opinion of this court, written by Justice Ladd. The final general conclusion at pages 181 and 182 of 190 Iowa is: "The law seems to be fully settled that a railway company is required to station a flagman or install electric or other signaling devices only when, owing to its situation, surroundings, or use, the crossing is more than ordinarily dangerous; so dangerous and of a character such that other than statutory warnings are essential to the reasonable protection of travelers on the highway, about to cross the railroad tracks. We are of opinion that the evidence was insufficient to carry that issue to the jury, and that the court erred in submitting it."

The case of Butters v. Chicago, M., St. P. & P. R. Co., supra, involved a small child two years of age who was injured while riding in an automobile in the town of Zwingle. The case is similar to the instant case in that the automobile struck the train. Trial court directed a verdict which was affirmed. The court said at pages 705, 709, 710 of 214 Iowa: "The description and view of this crossing, as we get it from the photographs and the testimony of the witnesses, indicate that [the crossing] is no more dangerous or hazardous than the ordinary railway crossing in any of the small towns in this state. * * * Under the record in this case, the question of alleged negligence on the part of the defendant is a question of law for the court. The record fails to reveal any actionable negligence on the part of the defendant company."

The case of O'Brien v. Chicago, R. I. &. P. R. Co., supra, involved the injuries to a passenger in an automobile crossing a railway track on Lincoln Street in Estherville. The car was struck by a double-header freight train. Here again one of the allegations with reference to negligence was that defendant

failed to maintain any flagman or other warning device at the crossing. The court said:

"We are not unmindful of the rule in this state and other states that, where a railroad crossing is peculiarly and unusually dangerous or hazardous for the traveling public, it is a question for the jury to say whether or not, under this situation, a flagman or other protective device should be kept at such crossing. We have before us evidence as to the character of this crossing and its surrounding conditions. We are aided also by numerous photographs, taken of the situation from various angles, and we must say that, under the evidence in this case, the crossing in controversy was not such a crossing as to come within the purview of the aforesaid rule. * * * we do not, as a matter of law, deem it to be of such a peculiarly unusually dangerous or hazardous crossing as comes within this rule." (Pages 1303, 1304 of 203 Iowa.)

Hitchcock v. Iowa Southern Utilities Co., supra, was a case where plaintiff's decedent was approaching the crossing from the south and defendant's train was approaching from the west. The day was warm, clear and quiet and the pavement dry. The surface of the road south of the tracks and west of the highway was comparatively level and slightly lower than the highway and the tracks. The court said at page 308 of 233 Iowa:

"With reference to appellant's second proposition, it is well settled in this state that if a railroad crossing is peculiarly and unusually hazardous it is for the jury to say whether warnings and safeguards in addition to statutory requirements should be provided to give reasonable protection to the public. [Citations] The photos before us and the testimony of the witnesses persuade us that this crossing was not more than ordinarily hazardous."

In the recent case of Wickman v. Illinois Central R. Co., supra, plaintiff's decedent was approaching the track from the north. The train was approaching the crossing from the west. The trees and farm buildings prevented a view of the crossing to the west from traffic approaching from the north until a point was reached about 70 feet from the crossing. We held there was such obstruction to plaintiff's decedent before reaching the crossing that the question of placing a warning signal was for the

jury. However, we stated in the case (page 917 of 253 Iowa) as follows: "Some principles are well settled. One is that a railroad company is not required to install a signaling device or station a flagman at every railway crossing."

█ III. No rate of speed in the open country in and of itself is negligence, nor an independent ground of negligence. Hartman v. Chicago G. W. Ry. Co., 132 Iowa 582, 110 N.W. 10; Wilson v. Chicago, M. & St. P. Ry. Co., 161 Iowa 191, 142 N.W. 54; Graves v. Chicago, R. I. & P. Ry. Co., 207 Iowa 30, 222 N.W. 344; Lenning v. Des Moines & Central Iowa R., 209 Iowa 890, 227 N.W. 828; Mast v. Illinois Central R. Co., 79 F. Supp. 149; Jasper v. Chicago G. W. Ry. Co., 248 Iowa 1286, 84 N.W.2d 21; Currie v. Currie, 249 Iowa 1284, 90 N.W.2d 13; Daly v. Illinois Central R. Co., 250 Iowa 110, 93 N.W.2d 68.

We will refer to the general proposition of speed in this division, and will consider the exceptions, upon which appellant depends, in the next division.

In Hartman v. Chicago G. W. Ry. Co., supra, the court said: "As has often been said no rate of speed in a train moving in the open country is in itself negligence as to a person upon a crossing * * *."

In Wilson v. Chicago, M. & St. P. Ry. Co., supra, the court said: "While the general rule that no rate of speed by a railway train in the open country is negligence per se, etc. * * *."

In Graves v. Chicago, R. I. & P. Ry. Co., supra, we said: "We have many times held that speed in the open country is not an independent ground of negligence * * *."

In Mast v. Illinois Central R. Co., supra (at page 158 of 79 F. Supp.), the Federal Court (N. D. of Iowa) Judge Graven said: "Under the Iowa law no particular rate of speed in the open country is in itself negligence or an independent ground of negligence." (Citations)

In Jasper v. Chicago G. W. Ry. Co., supra, we said: "We have held several times no speed of a train is in and of itself negligence * * *."

In Daly v. Illinois Central R. Co., supra (page 114 of 250 Iowa), this court said: "The rule exists that no amount of speed

of a railroad train is in and of itself negligence except where regulated by statutes or ordinance."

IV. There are exceptions to the general rule as to speed of a train in the country, and sometimes in cities and towns. It is upon the exceptions appellant pins his hope for reversal. In support of his hope appellant's counsel cites the following cases. In view of the variance from the facts in the instant case, they are not convincing.

In Hartman v. Chicago G. W. Ry. Co., supra (page 586 of 132 Iowa), the exception is: "But it sometimes happens, when considered with reference to the circumstances of the particular place, that the rate of speed may be an important factor in determining whether due care has been exercised."

In Graves v. Chicago, R. I. & P. Ry. Co., supra, the court added after the general statement as to speed: "But that, at places of peculiar or extraordinary danger, it [the speed] may become a material factor, in connection with other facts and circumstances, in determining whether due care has been exercised."

In the Mast case Judge Graven said: "However, speed and the presence of weeds, brush, and trees may be considered along with other matters in determining whether the railroad company had exercised reasonable care at a certain crossing under the conditions and circumstances then existing. * * *."

In Jasper v. Chicago G. W. Ry. Co., supra, after stating the general rule as to speed, we stated: "But any speed may constitute negligence if, under the circumstances, reasonable prudence calls for a lesser speed."

In Daly v. Illinois Central R. Co., supra, at page 114 of 250 Iowa, we said: "But there is also the rule that any speed may be negligence if, under the circumstances of the particular situation, a slower rate of advance is called for in the exercise of reasonable prudence."

V. The important question in the instant case, therefore, is whether or not the circumstances and conditions at or surrounding the railroad crossing under consideration were extraordinarily hazardous, or were of such nature that a signal mechanism or slower speed was required.

At the expense of slight repetition we will emphasize the

facts. They are without dispute in the record. At a point 410 feet south of the crossing the full vista of the track and the fields south thereof were level and clearly visible from the crossing east to a point 1700 feet. The evidence discloses without conflict that in this area of 1700 feet east of the crossing there were no ob-. structing trees; no shrubbery; no buildings of any kind; no growing crops; no sunken railroad right-of-way with high banks on each side; no other obstructing nor diverting objects of any kind.

The Coalville Road sometimes had rather heavy traffic in the morning. However, plaintiff testified that he could see up the road to the north about a half mile, which would be far beyond the crossing, and there was no traffic approaching. In the case of Russell v. Chicago, R. I. & P. R. Co., 249 Iowa 664, 86 N.W.2d 843, 70 A. L. R.2d 927, we said the matter of traffic alone did not constitute negligence except to the extent that more cars might become involved in a crossing situation.

Under such factual conditions and circumstances we hold there was no question of negligence to be presented by the trial court to the jury, either as to signal mechanism or speed of the train.

VI. Appellant cites only four cases in support of his assignment of error that the question of installation of signal mechanism must be submitted to the jury to be determined by it as a question of negligence. Two cases are cited in the original brief and argument. Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781; and Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 91 N.W.2d 380. Two other cases are cited in appellant's reply brief as to this alleged error. Illinois Central R. Co. v. Stufflebean, 8 Cir. 270 F.2d 801; Wickman v. Illinois Central R. Co., 253 Iowa 912, 114 N.W.2d 627. None of the four cases sustains appellant's position in view of the undisputed facts in this case.

In the Strom case there were many diverting circumstances as far as plaintiff's approach to the crossing was concerned. No unobstructed and undiverting expanse of 1700 feet was present. The court said (pages 1058, 1060 of 248 Iowa): "At least one automobile on [Highway] 64 approached plaintiff at an angle of

only 25 degrees from straight north. Its lights were on high beam and naturally interfered with her vision. * * * [as to] five or more cars making left turns just ahead of her they not only occupied her attention but obstructed her view, at least in part, to the north and northwest. * * * There were other obstructions to her view and other diverting circumstances. The jury could properly find the brilliantly lighted lumber sign just northwest of the crossing was a diverting circumstance. As stated, a revolving light at the top of the sign flashed on and off, obviously to attract attention of passing motorists. Further, the bright lights of this large sign materially lessened the warning effect of the headlight on the locomotive."

With reference to the Plumb case the same situation pertains as to the track being obscured from view. In the opinion we said: "A bank of earth east of the highway and south of defendant's track at least partly obstructs the view to the east of a traveler approaching from the south until he is within 25 feet of defendant's track." (Page 1197 of 249 Iowa)

The case of Illinois Central R. Co. v. Stufflebean, supra, pertains to the same crossing involved in the instant case. However, the circumstances were as opposite from those in the case at bar as day is from night. In the Stufflebean case the collision happened because the railroad company was in the process of a switching operation adjacent to and across the crossing. The switch engine had "kicked off" a car across Coalville Road. The accident happened on January 10, 1957, at 6:30 p.m., when darkness prevailed. Stufflebean could not see the remainder of the switching train east of the highway. While a switchman was near the crossing waving his light, plaintiff had no way of knowing he was waving at him. So Stufflebean proceeded to cross the track and was hit by cars which the switching train had continued to back across Coalville Road after the single car was "kicked off."

The final case cited by appellant was the Wickman case. The same question was raised in that case as to signal mechanism at the crossing as appears in this case. The circumstances surrounding the crossing were completely different from those in the case at bar. Plaintiff's decedent was driving south on a country road.

The train which struck him was coming from the west. Trees shut off a view of the crossing to the west from traffic approaching from the north. The exact distance at which a train from the west would be visible to the southbound traffic is in some dispute, but plaintiff's evidence shows it was slightly less than 70 feet; not 1700 feet as in the instant case.

In appellant's reply argument his counsel cites four cases dealing with a technical matter concerning inferences to be drawn from undisputed facts. The treatise on this subject and the cases are interesting, but not pertinent as to the controlling questions in case at bar.

VII. Appellant's proposition No. 2 pertains to the trial court refusing to admit Exhibit HH. This exhibit was a photograph of the signal mechanism which had been erected at this crossing shortly before the trial, and over two years after the collision.

Proposition No. 7 was somewhat similar. We will consider them together. It objects to Instruction No. 22. The instruction pertained to the testimony of Mr. Hoover, the photographer who had taken the Exhibit HH.

Appellant's counsel was attempting to emphasize the fact to the jury that two years after the collision in the case at bar the railroad company erected a signal mechanism at the crossing.

The great weight of authority is against showing in evidence the making of repairs or of improvements after the event, as evidence of negligence in the case. Hudson v. Chicago & N. W. R. Co., 59 Iowa 581, 13 N.W. 735, 44 Am. Rep. 692; Kuhns v. Wisconsin, I. & N. Ry. Co., 76 Iowa 67, 40 N.W. 92; Achey v. City of Marion, 126 Iowa 47, 101 N.W. 435; See v. Wabash R. Co. 123 Iowa 443, 99 N.W. 106; Fitter v. Iowa Telephone Co., 129 Iowa 610, 106 N.W. 7; Blake v. City of Bedford, 170 Iowa 128, 151 N.W. 74; 10 Am. Jur., page 390, section 1651; 20 Am. Jur., page 267, section 282; 170 A. L. R. 7; 64 A. L. R.2d 1299.

A typical broad statement supported by cited cases appears in 10 Am. Jur., Carriers, page 390, section 1651: "It is well settled that in actions against carriers, evidence of subsequent repairs is not competent for the purpose of proving antecedent negligence on the part of the defendant."

Appellant also cited in support of his position as to this point the case of LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 962, 11 N.W.2d 36. In said case it was stated: "We are not questioning the rule that generally subsequent repairs or changes in the place causing the injury cannot be shown to prove the alleged negligence."

The trial court did not commit error in refusing to admit Exhibit HH.

■ In Instruction No. 22 the court refers to the testimony of Mr. Hoover which, under some questions on cross-examination, divulged the fact that the signal mechanism had been erected. The court said: "The testimony of Andy Hoover * * * is for your consideration for all purposes in connection with the evaluation of the testimony of Mr. Hoover; but should not be considered by you in connection with any other matters or issues in this case."

The fact is that Mr. Hoover did testify about the later existence of the signal mechanism. The jury knew all about it. The precaution appearing in Instruction No. 22 as to subsequent improvements was necessary. No reversible error is present.

VIII. The remainder of the propositions relied upon by appellant for reversal are 4, 5, 6 and 8. In propositions Nos. 4 and 5 appellant objects to the court's Instructions Nos. 12, 13 and 14 and offers in place thereof Requested Instructions Nos. 1, 2 and 3. The instructions requested by appellant are too broad. The trial court's Instructions Nos. 12, 13 and 14 properly and adequately cover the subject involved in appellant's requested instructions.

As to proposition No. 6 appellant contends the court erred in failing to give a general instruction to the jury concerning the matter of warning as to the crossing. The specific questions considered by us are sufficient as to the question of warning. No other general instruction was necessary.

Proposition No. 8 is a statement that the court erred in not sustaining the motion for new trial. All specific questions involved in the motion have had our consideration.

We find no reversible error in any of said instructions.

The case is affirmed.—Affirmed.

All JUSTICES concur.