JAY W. PLUMB, appellee, v. THE MINNEAPOLIS AND ST. LOUIS RAILWAY COMPANY, a Minnesota corporation, and M. D. VLADYKA, appellant.

No. 49465.

(Reported in 91 N.W.2d 380)

1188

1190

JULY 28, 1958.

Lundy, Butler, Lundy & Wilson, of Eldora, for appellant.

Lex Hawkins, of Des Moines, for appellee.

GARFIELD, C. J.—This is a law action to recover for personal injury and damage to plaintiff's 1953 Mercury Tudor sedan resulting from a collision between it and defendant railway's two-car passenger train at a highway crossing about 8 a.m., January 21, 1955. The train's engineer was a codefendant with the railway company but on their motion, at the close of the evidence, the court dismissed the case as to the engineer. The jury returned a verdict for plaintiff of $15,129.60 and from judgment thereon defendant M. & St. L. Ry. Co. appealed.

It is not clear whether plaintiff or a fellow worker named Baxley was driving the automobile. Baxley was killed by the collision and plaintiff, because of amnesia, remembers nothing about it. There were only the two occupants of the car. The automobile was proceeding north on a gravel road known as Beer Garden Road about a half mile east of the Marshalltown city limits. Defendant's single track runs generally east and west but, going east from the crossing, makes a gradual curve somewhat to the south. The train came from the east around this slight curve. North of and parallel with defendant's track is the double track of the (Chicago &) Northwestern Railway. Distance between the center of defendant's track and the south Northwestern track is 44.7 feet. Center of the other Northwestern track is 13 feet farther north.

A crossbuck sign of the familiar type is situated 29 feet south and 27 feet east of the center of the M.& St.L. crossing. Another crossbuck is 26 feet north and 16 feet east of the center of the same crossing. (This crossbuck is thus 11 feet nearer the highway than the one south of it.) A third crossbuck is 75 feet north and 29 feet *west* of the center of the M. & St. L. crossing, north of all three tracks.

Plaintiff and Baxley rode from their homes in Des Moines, a distance of about 50 miles, the morning of the collision. Both were employed at the Iowa Power & Light plant east of Marshalltown. Plaintiff had worked there five days before January 21, riding between home and work each day. The two men traded rides at least three days. Plaintiff testifies he rode with Baxley the day previous to January 21 and that is the only time he had been over this crossing—he was then a passenger. The light plant may be reached by going through Marshalltown without using Beer Garden Road. Plaintiff says too, in a deposition offered by defendant, that the first day the two men came together and also on the morning of the collision Baxley rode with him.

Right after the collision plaintiff was lying between the rails of the south Northwestern track on the west side of the road and his car with its rear a few feet from plaintiff was headed south just south of the same track. The right front of

the automobile was within a foot or two east of a tall pole on the west side of the road.

Mr. and Mrs. Gall saw the collision through windows in their home about 650 feet northeast of the crossing. They saw the car approach the crossing from a point between 250 and 380 feet south of it and were aware of the train's approach from hearing it whistle. Mrs. Gall testifies the automobile "was going slow enough I thought it was stopping. * * * I saw the actual collision. * * * I noticed nothing unusual about the automobile as it came down the road. * * * I wouldn't have thought he was going over 35 miles per hour."

Mr. Gall also says there was nothing unusual about the car as it headed north. "I noticed it come to almost a complete stop and thought he was stopping for the crossing. Then just a few moments before the train got there he started up again * * *. As the car came north it maintained an approximately straight course. It didn't swerve. I would estimate it was traveling between 25 and 40 miles per hour."

The court submitted to the jury three grounds of claimed negligence on defendant's part. (1) Failure to have either a flagman at the crossing or an automatic signal to warn plaintiff of the train's approach. (2) Permitting the crossbuck on the southeast corner of the crossing to be placed in an inconspicuous position. (3) Failure to provide a sign with large and distinct letters to give plaintiff notice of the proximity of defendant's railway.

I. Defendant first argues the issue of plaintiff's freedom from contributory negligence was erroneously submitted to the jury in instructions 16, 17 and 18. Instruction 16 states there is no direct evidence as to whether plaintiff was driving the automobile or only riding as a passenger; Mr. and Mrs. Gall gave the only testimony as to acts and conduct of the driver; there is no evidence as to acts and conduct of the passenger; it makes no difference whether plaintiff was driver or passenger to the extent that unless you (jurors) find the driver was free from contributory negligence plaintiff cannot recover whether he was driver or passenger; *if the driver was free from contributory negligence it may be assumed the passenger was also free there-*

*from,* but if the driver was guilty of contributory negligence it follows that the passenger must also be considered guilty thereof because there is no evidence of the passenger's acts and conduct.

Instruction 17 contains a statement, like the one just italicized by us, that if you (jurors) find the driver acted with ordinary care under the circumstances you are warranted in finding plaintiff free from contributory negligence. Instruction 18 tells the jury the test of contributory negligence is whether or not the driver of plaintiff's automobile acted as an ordinarily prudent person under the circumstances.

Defendant objected to these instructions as eliminating from jury consideration the care owed by the passenger and plaintiff's burden to prove his own freedom from contributory negligence, if he was a passenger. It is argued the instructions impute to the passenger, if plaintiff was such, the driver's freedom from contributory negligence and, since plaintiff did not prove he was either driver or passenger, he was required to prove freedom from contributory negligence of both. It is also argued there is insufficient proof of freedom from contributory negligence of either driver or passenger.

Of course the burden rested on plaintiff to prove his own freedom from contributory negligence. The jury was so instructed in instructions 6, 9, 13, and 14. While instructions are to be taken together and read as a whole, the giving of correct instructions on an issue does not obviate error in the giving of incorrect ones upon that issue since it is impossible to tell whether the jury followed the correct guide or the incorrect one. Clarke v. Hubbell, 249 Iowa 306, 314, 315, 86 N.W.2d 905, 910, and citations.

It is doubtless true also that if plaintiff was only a passenger in his car at the time of the collision he was required to exercise ordinary care for his own safety although he was not required to exercise the same degree of vigilance in looking and listening as required of the driver. Frideres v. Lowden, 235 Iowa 640, 648, 17 N.W.2d 396, 400, and citations; Kinney v. Larsen, 239 Iowa 494, 499, 31 N.W.2d 635, 638; Williams v. Kearney, 224 Iowa 1006, 1009, 278 N.W. 180; Article by Bruce M. Snell, Jr., 43 Iowa Law Review 57, 62, 63. See also Schroeder

1194

v. Public Service Railway Co., N. J., 118 A. 337; 65 C. J. S., Negligence, sections 150, 151, pages 794, 795.

██ Defendant's objections to the parts referred to of instructions 16, 17 and 18 must be sustained. If plaintiff was a passenger in the car it does not follow he was free from contributory negligence from the fact, if it be a fact, the driver was free from negligence. The passenger occupied the right side of the seat, the direction from which the train approached, and a somewhat clearer view of it was available to him than to the driver. Although the driver was required to exercise greater vigilance than the passenger, the latter could not entirely entrust his safety to the former.

██ We feel compelled to hold too there is insufficient proof of the driver's freedom from contributory negligence. As instruction 16 states, the only testimony as to acts and conduct of the driver, if it is such, is that of the Galls, previously summarized by us. They saw nothing unusual about the car as it headed north. It came almost to a complete stop, apparently for the crossing, then started up a few moments before the train reached it and the collision occurred. Although the view to the east was partly obstructed as the crossing was approached, the only reasonable inference is that the train could readily have been seen when the car was brought almost to a complete stop near the crossing. And according to Mr. Gall the train whistled "as it came around the grove from the south and continued to whistle as it approached the crossing." A finding of the driver's freedom from contributory negligence may hardly rest upon the testimony of Mr. and Mrs. Gall.

██ It is true we have frequently held that in general where the view of the railroad is obstructed or there are diverting circumstances the issue of freedom from contributory negligence is usually for the jury. Coonley v. Lowden, 234 Iowa 731, 735, 736, 12 N.W.2d 870, 874, and citations; Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 1063, 82 N.W.2d 781, 787, 788, and citation. But unless the no-eyewitness rule is applicable there must be at least some evidence of freedom from contributory negligence.

██ The contention plaintiff was entitled to the benefit of

the no-eyewitness rule seems not to have been urged in the trial court. The jury was not instructed upon it. Plaintiff did not object to the instructions upon this ground nor request an instruction embodying the rule. Further, the rule is applicable only where it appears there is no obtainable direct evidence of what a decedent—or an injured person who survives but is unable to testify to the occurrence because of amnesia resulting therefrom—did or failed to do by way of precaution at and immediately before his injury. Ruble v. Carr, 244 Iowa 990, 995, 59 N.W.2d 228, 231, 232, and citations; Low v. Ford Hopkins Co., 231 Iowa 251, 253, 1 N.W.2d 95, 97; Merchants Transfer & Storage Co. v. Chicago, R. I. & P. Ry. Co., 170 Iowa 378, 392, 393, 150 N.W. 720, 725. Article by Bruce M. Snell, Jr., 43 Iowa Law Review 57, 68.

There is no showing direct evidence of the kind referred to was not obtainable. Accordingly we do not decide the question, apparently first raised here, as to applicability of the no-eyewitness rule if such showing were made. Whether testimony of the Galls is sufficient to deprive plaintiff of the benefit of the rule, if he was the driver, is a question upon which we have been closely divided. See Rickabaugh v. Wabash R. Co., 242 Iowa 746, 44 N.W.2d 659; Schwartz v. Helsell, 243 Iowa 95, 50 N.W. 2d 573.

II. We cannot accept plaintiff's argument that defendant is estopped to challenge the sufficiency of evidence of freedom from contributory negligence by requesting special interrogatories to be submitted to the jury upon that issue. Defendant's motions for directed verdict and to withdraw certain issues from the jury raised the question that proof of freedom from contributory negligence was insufficient. These motions had been overruled and it was defendant's duty to bow to these rulings. Its request for special interrogatories was not a waiver of its right to complain of the rulings referred to. This is the effect of rule 331(b), Rules of Civil Procedure. Kinney v. Larsen, supra, 239 Iowa 494, 496, 31 N.W.2d 635, 636, and citation.

III. There is no merit to defendant's claim of error in the court's refusal to submit special interrogatories to the jury as to whether plaintiff was driver ·or passenger and

looked and listened for approaching trains. The court did submit nine special interrogatories, some of which defendant requested. One of these sufficiently includes the matter of looking and listening and defendant was not prejudiced by nonsubmission of its interrogatories in the precise form requested. See Main v. Tony L. Sheston-Luxor Cab Co., 249 Iowa 973, 976, 89 N.W.2d 865, 867.

We have held rule 206, Rules of Civil Procedure, requires the submission of only ultimate facts, not evidential ones, the answer to which would be decisive of the case or some claim involved therein. Ipsen v. Ruess, 241 Iowa 730, 736, 737, 41 N.W.2d 658, 663; Danker v. Iowa Power & Light Co., 249 Iowa 327, 331, 86 N.W.2d 835, 838, 839. The requested interrogatory as to whether plaintiff was driver or passenger is not of the kind the court was compelled to submit.

IV. Defendant assigns error in submission to the jury of the charge it was negligent in failure to have either a flagman at the crossing or an automatic signal. It is argued there is no proof the crossing is such as to require either type of warning.

It is well settled a railroad may be compelled in the exercise of due care to provide some warning of the approach of a train other than the whistle and bell required by statute, when the crossing is more than ordinarily dangerous and it is essential to the reasonable protection of highway travelers. Whether in a given case the crossing is such as to call for an additional signal such as flashing lights, bell or gong, is a question for the jury unless reasonable minds could reach only one conclusion thereon from the evidence. Strom v. Des Moines & Central Iowa Ry. Co., supra, 248 Iowa 1052, 1068, 1069, 82 N.W.2d 781, 790, 791, and citations.

We are satisfied the jury could properly find this crossing is such as to require a flagman or automatic signal at the time in question. Glanville v. Chicago, R. I. & P. Ry. Co., 190 Iowa 174, 181, 180 N.W. 152, is perhaps our leading decision on this question although it arose long before motor vehicle traffic assumed present-day proportions. It quotes with approval a statement from a Massachusetts case that precautions additional to those required by statute are called for when there is something in the contour of the land, construction of the railroad,

nature or amount of highway travel or other conditions which renders the bell and whistle inadequate properly to warn the public of danger.

There is substantial evidence this crossing is quite deceptive in appearance. Several photographs received as exhibits and certified to us show the track appears to be at least partly buried. In any event it does not cross the highway on an elevated grade. However, the Northwestern tracks, some 40 feet to the north, are raised well above the highway and plainly visible. As previously explained, the crossbuck south of defendant's track is 11 feet farther from the highway than the one north of it. The crossbucks on either side of the Northwestern tracks "were quite visible. They had been kept up and were painted. The M. & St. L. hadn't. They were weather-beaten and faded." The Northwestern crossing is much more readily visible than is defendant's. A bank of earth east of the highway and south of defendant's track at least partly obstructs the view to the east of a traveler approaching from the south until he is within 25 feet of defendant's track. In January 1955 between 75 and 80 automobiles traversed this crossing from 7 to 8 a.m. There had been other accidents or near accidents there.

That evidence of prior accidents and near accidents was admissible to show the dangerous character of the crossing see Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 367-9, 30 N.W.2d 120, 126, and citations; Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1264, 30 N.W.2d 97, 103, and citations.

V. There is substantial evidence to support the other two charges of negligence, to which we have referred, that were submitted to the jury. Defendant's alleged failure to provide a warning sign with large and distinct letters charges a violation of section 478.1, Codes 1954, 1958, which requires every railroad to erect at all crossings: "a sign with large and distinct letters placed thereon, to give notice of the proximity of the railway, and warn persons of the necessity of looking out for trains. Any railway company neglecting or refusing to comply with * * * this section shall be liable for all damages sustained by reason of such refusal or neglect, and it shall only be necessary,

in order to recover, for the injured party to prove such neglect or refusal."

It is perhaps a close question whether negligence in either of these two respects—other than failure to provide a flagman or automatic signal—may be said to be a proximate cause of plaintiff's injury. Of course the collision might have occurred if defendant were not negligent in these respects. But absolute certainty of proof of proximate cause is not required. We cannot say as a matter of law that due care on defendant's part in the matters referred to would have proved unavailing and the collision would have occurred notwithstanding such care. We conclude the issue of proximate cause, as in most cases where there is evidence of negligence, was for the jury. See in this connection Lindquist v. Des Moines Union Ry. Co., supra, 239 Iowa 356, 371, 30 N.W.2d 120, 127, 128, also Frideres v. Lowden, supra, 235 Iowa 640, 644, 645, 17 N.W.2d 396, 398, 399, and citations, although the question there was whether failure of whistle and bell was a proximate cause of the collision.

VI. Defendant finds fault with the statement in instruction 2, which summarizes plaintiff's petition, that the train was being operated in excess of 60 miles per hour, when the evidence does not support the allegation. We have frequently pointed out it is better that instructions not refer to an issue which, for lack of evidential support or otherwise, is not submitted to the jury. But the mere statement of pleaded issues does not ordinarily operate as a submission thereof to the jury. Such a statement is reversible error only when it appears to have been prejudicial. Clayton v. McIlrath, 241 Iowa 1162, 1166, 1167, 44 N.W.2d 741, 744, 27 A. L. R. 2d 307, and citations; Bohnsack v. Driftmier, 243 Iowa 383, 389, 52 N.W.2d 79, 82.

In view of instructions 4 and 10 we are not persuaded the statement in instruction 2 was prejudicial to defendant. Instruction 4 says No. 2 is simply a statement of the claims made by plaintiff's petition and is not to be considered as evidence. Instruction 10 states the three grounds of alleged negligence heretofore referred to are the only ones to be considered in determining whether defendant was negligent. See precedents last above.

VII. The objection defendant urges here to instruction 25 was not made in the trial court as provided by rule 196, Rules of Civil Procedure. According to the rule, such a belated objection will not be considered on appeal. Mongar v. Barnard, 248 Iowa 899, 911, 82 N.W.2d 765, 773, and citations.

VIII. There is no merit to the claim the dismissal of the train's engineer entitled the railroad to a dismissal. The claim proceeds from the false premise that plaintiff's action against the railroad is based solely on the alleged negligence of its engineer. If such were the fact we may assume dismissal of the engineer would require dismissal of the railroad. See Lahr v. Chicago & N. W. Ry. Co., 212 Iowa 544, 553, 554, 234 N.W. 223, and citations; Hall v. Miller, 212 Iowa 835, 235 N.W. 298; 30A Am. Jur., Judgments, section 425; 50 C. J. S., Judgments, section 760c, page 286.

It is true plaintiff's petition contains an allegation that his injuries were caused by the negligence of the railroad by and through its engineer. This follows the statement, referred to in Division VI hereof, that the train was being operated in excess of 60 miles per hour by the engineer. Following these allegations the petition sets out in detail the specific acts of negligence charged against the railroad and then separately the negligent acts charged against the engineer which plaintiff states concurred with the negligence of the railroad. The petition goes on to allege plaintiff was injured by the negligence of defendants *and each of them*, as aforesaid. From the whole petition it is clear plaintiff's case against the railroad is not based solely on claimed negligence of the engineer. None of the alleged acts of negligence submitted to the jury is chargeable to the engineer. The decisions last cited are not in point. See as bearing on this Eckles v. Des Moines Casket Co., 152 Iowa 164, 130 N.W. 113; Band v. Reinke, 230 Iowa 515, 298 N.W. 865; Midland Valley R. Co. v. Townes, 179 Okla. 136, 64 P.2d 712; Annotation, 131 A. L. R. 181.

IX. Defendant assigns as error the receipt in evidence of some photographs of the scene of the collision on the ground it does not appear they are accurate portrayals thereof. All these photographs were properly identified as rea-

sonably accurate portrayals of the scene at the time of the collision. The witnesses were extensively cross-examined with reference to them. The trial court conducted some examination with reference to part of these exhibits. They were all taken by men experienced in photography with no apparent interest in the outcome of the trial nor improper motive.

The two exhibits most strenuously objected to (one an enlargement of the other) were taken under the direction of a then state highway patrolman by a photographer for a Marshalltown newspaper. Defendant offered testimony that part of the crossbuck shown by these photographs (taken from a distance of 250 feet) appears to have been retouched to make it more obscure. Plaintiff offered evidence to the contrary. Many photographs of the scene, most of them enlarged, were offered by defendant and admitted. In a sense the trial became a battle of photographs.

As defendant concedes, the trial court has discretion in ruling on the admissibility of photographs. This is especially true where they are intended as an illustration in aid of oral testimony rather than, themselves, independent evidence. Ingebretsen v. Minneapolis & St. L. R. Co., 176 Iowa 74, 83, 155 N.W. 327, 330, and citations; Hansen v. Franklin County, 247 Iowa 1287, 1291, 78 N.W.2d 805, 807; 20 Am. Jur., Evidence, section 730; 32 C. J. S., Evidence, section 716 (the matter "rests largely in the discretion of the trial judge, * * *."). We find no abuse of discretion in the admission of photographs here.

A few other matters are argued and have been considered. They are without merit and do not call for separate discussion.

The conclusions reached in Division I entitle defendant to a reversal and new trial. We feel this is not a case where we should enter, or direct the trial court to enter, final judgment for defendant. See rule 349, R. C. P.—Reversed and remanded.

BLISS, OLIVER, WENNERSTRUM, HAYS, THOMPSON, and PETERSON, JJ., concur.