RALPH WICKMAN, administrator of estate of Gerald Duane Wickman, deceased, appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY and GERALD R. DECKER, appellants.

No. 50533.

APRIL 3, 1962.

Mack, Mack & Hansen, of Storm Lake, for appellants.

S. E. Larson and Alan Loth, both of Fort Dodge, for appellee.

THOMPSON, J.—Plaintiff's decedent, Gerald Duane Wickman, was killed on August 19, 1959, in a collision between a gravel truck which he was driving and a freight train of the defendant railroad company operated by the defendant Gerald R. Decker as engineer, at an intersection of a farm-to-market road and the railroad tracks. The accident happened shortly after noon. The train was proceeding east and the truck came from the north. Among the plaintiff's specifications of negligence were failures of the defendants to sound a whistle or ring the bell at the required distances before the train approached the crossing. However, the jury verdict was against the railroad company only, the defendant engineer being absolved from liability. From this the parties seem to agree, and

we concur, that the jury found against the plaintiff as to these specifications. The jury verdict necessarily rested on findings of negligence against the company on specifications of negligence based on failure to give adequate warning of the approach of the train in view of the speed of the train and the location of the crossing and its alleged dangerous and obscured nature. Specifically, what seems to be the major fighting point in the case concerns plaintiff's specification D, which we quote: "In failing or refusing to place either a watchman or any electric safety device, or any gate, or adequate warning signs at or near the crossing hereinabove described prior to or at the time of the collision hereinabove specified."

I. The defendant railroad company assigns three errors. The first asserts that the court was in error in refusing to direct a verdict for the defendant because the evidence was insufficient to generate a jury question on the issue as to whether the railroad company should have guarded the crossing by the installation of an electric signaling device or by maintaining a watchman there. A consideration of this question requires some further statement of facts.

It is of course thoroughly established that under these circumstances we take the evidence in the aspect most favorable to the plaintiff which it will reasonably bear. This means, usually, that it is the plaintiff's evidence which is most important, although it may occasionally be strengthened by something shown by the defendant. It also means that if plaintiff's evidence makes a prima-facie case, contradictory evidence for the defendant generally has little if any importance in determining whether a verdict should have been directed.

The decedent, hereinafter referred to as Wickman, was driving a loaded gravel truck south on the gravel highway just prior to the collision. He had been engaged in this occupation for some weeks prior to August 19, and had gone over the railroad crossing many times. The crossing was guarded by the ordinary crossbuck warnings, located one on each right-hand side of the crossing on the north and on the south. On the northwest corner of the intersection were the farm buildings of Leon Wenzel, with a somewhat extensive grove of trees. The trees shut off a view of the crossing to the west from traffic

approaching from the north until a point about 70 feet from the crossing, when there was a view for about 600 feet up the track. The crossing was in no way obscured to the east to traffic from the north, nor in either direction to traffic coming from the south. The exact distance at which a train from the west would be visible to southbound traffic is in some dispute, but plaintiff's evidence shows it was slightly less than 70 feet.

The grove on the Wenzel farm shut off any view of the tracks to the west to one coming from the north for somewhere between one-quarter and one-half mile. There was, however, one point at which a fleeting glimpse of the track might be had, described by Mr. Wenzel in this way:

"Well, it is blind to the west until you once get right past the house. If you are looking you can see through somewhat to see if something is coming; but if you have speed it is too late.

"I mean there is a small area that is visible south of the house between the house and this chicken house, if you especially knew where to look; you could pick out a train or something through there but you would have to especially look."

Other evidence shows there was a slight gap through which a small segment of the track might be seen; but only as Mr. Wenzel said, "if you especially knew where to look." Other truckers who used the road several times each day said they had never noticed this aperture; they thought the view was entirely shut off. The entire record shows the opening was a very slight one, through which only a short section of the track might be seen in the fraction of a second available if the driver knew where to look or happened to be so fortunate as to glance at the right time. Whether the train might have been seen on the short stretch of track visible is only conjecture.

■■ We have said a traveler is not bound to look at every point at which a train might be seen. Rosin v. Northwestern States Portland Cement Co., 252 Iowa 564, 572, 107 N.W.2d 559, 564. The possibility of view here was so fleeting and the segment of track that could be seen so small that we think it detracts nothing from the danger of the crossing.

■■ No claim is made here as to Wickman's contributory negligence. But the defendant urges with force and skill that

the crossing in question was not shown to be sufficiently dangerous to permit submission to the jury of the question of additional safeguards and warnings. Some principles are well settled. One is that a railroad company is not required to install a signaling device or station a flagman at every railway crossing. Glanville v. Chicago, R. I. & P. R. Co., 190 Iowa 174, 180, 180 N.W. 152, 155. Another holds that the statutory requirements for warnings at railway crossings, as the crossbucks, ringing the bell and blowing the whistle are minimum only; and that conditions may exist which require more. Russell v. Chicago, R. I. & P. R. Co., 249 Iowa 664, 668, 86 N.W.2d 843, 845, 846, 70 A. L. R.2d 927; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 360, 30 N.W.2d 120, 122.

A third principle, elementary of course, is that in this class of cases our duty is not to decide whether the crossing in question was in fact extraordinarily hazardous so that some warning beyond the statutory requirements was called for, but only to say whether there was substantial evidence from which a jury might so find. Rosin v. Northwestern States Portland Cement Co., supra, loc. cit. 252 Iowa 575, 107 N.W.2d 565; Russell v. Chicago, R. I. & P. R. Co., supra, loc. cit. 249 Iowa 671, 86 N.W.2d 847.

The general rule also is that whether the condition of a crossing, with its surroundings, is such as to call for additional warning devices, or flagmen, is a question for the jury unless reasonable minds could reach only one conclusion from the evidence. Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1196, 91 N.W.2d 380, 386; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1068, 1069, 82 N.W.2d 781, 790, 791, and citations.

The record shows these matters in regard to the crossing in question: the view to the west for traffic coming from the north was seriously obstructed; there was a considerable volume of traffic on the highway, particularly in the summer; the road was graveled, and was rough and at a short distance back of the crossing had chuckholes which required more than usual attention to the driving of motor vehicles; and, although the jury found that the whistle and bell had been sounded, they were not heard by other drivers in the vicinity and so the con-

clusion might be reached that they were not adequate warnings of the approach of trains at this obscured crossing. In the Glanville case, supra, we quoted with approval from Hubbard v. Boston & A. R. Co., 162 Mass. 132, 38 N.E. 366: " 'There must be something in the configuration of the land, or in the construction of the railroad, or in the structures in the vicinity, or in the nature or amount of the travel on the highway, or in other conditions, which renders ringing the bell and sounding the whistle inadequate properly to warn the public of danger.' " Loc. cit. 190 Iowa 181, 180 N.W. 155. In the instant case the whistle and bell were not heard by other drivers nearby; there was a grove between the approaching train and Wickman; and the engineer testified that the locomotive whistle sounded like a loud automobile horn.

We also quoted with approval in the Glanville case: " '* * * before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous: as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed, either by the company itself or by other objects proper in themselves; or that the crossing is a much traveled one, and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railway or other business, or by reason of some such like cause; * * *.' " The quotation is from Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, loc. cit. 190 Iowa 180, 181, 180 N.W. 155. It will be noted that the various situations which permit a jury's consideration are stated in the disjunctive rather than the conjunctive; the inference is that any one of them might be sufficient to require submission. The defendant appears in argument to think that more than one of them must be found, but we do not so understand the law. We have here at least the element of a blind crossing until approaching traffic on the highway was within less than 70 feet, and for some reason, perhaps the intervening grove, perhaps the nature of the whistle on the Diesel engines which resembled a loud automobile horn, the whistle and bell were not heard

although sounded. There is also evidence of a considerable amount of traffic, somewhat indefinitely stated. We have said, however, that we do not consider this of great importance. In Russell v. Chicago, R. I. & P. R. Co., supra, we said: "The amount of traffic does not seem important upon the question of a hazardous condition except that, if such a condition does exist, more travelers upon the highway will be endangered. If it is there, it is just as dangerous to those who do use the road as though their numbers were legion." Loc. cit. 249 Iowa 668, 86 N.W.2d 846. The same observation applies to a crossing obstructed from only one direction.

We must conclude the showing made in the case at bar required a determination by the jury whether the crossing was so hazardous that something more than the minimum statutory warning requirements should have been provided by the defendant in the exercise of ordinary care for the safety of those using the highway at that point. Defendant's real grievance here, if one it has, is with the jury which found the facts in opposition to defendant's view.

■■ II. Defendant assigns error on the refusal of the trial court to direct a verdict in its favor because, it is said, there is no evidence the failure to guard the crossing by a flagman or flashing signal was the proximate cause of the collision and resulting injuries. Here the defendant seems to be urging that because the crossbucks were visible and Wickman knew of the crossing, such warnings would have added nothing. But the defendant is overlooking the obvious fact that knowledge of a crossing is not necessarily knowledge of an approaching train. The distinction is apparent. See Russell v. Chicago, R. I. & P. R. Co., supra, loc. cit. 249 Iowa 666, 86 N.W.2d 845. The question of proximate cause is ordinarily for the jury. We discussed the matter at some length in Daly v. Illinois Central Railroad Co., 248 Iowa 758, 761, 762, 80 N.W.2d 335, 337, 338. The situation there was much like that now before us, and there is in addition citation of many authorities. All hold under such circumstances as we have in the instant case the question of proximate cause must be determined by the jury.

III. The final assignment of error concerns the admission of evidence that after the collision the defendant installed a

"blinker" signal in place of the former crossbuck on the northwest corner of the crossing. There was testimony from the engineer from which it appeared that the three Diesels at the front of the train had cleared the crossing and Wickman's truck struck about the center of the first car behind the Diesels. It also fairly appeared that Wickman attempted to turn the truck to the right—that is, to the west—immediately before the collision, but was not successful in changing its course sufficiently to avoid the accident. In attempting to turn the truck he struck the crossbuck on the northwest corner, knocking it over. There was evidence, admitted without objection, that the crossbuck was first replaced by a steel post with a reflector. Later, this appears from the testimony of Leon Wenzel:

"Q. Is that sign still there? A. No, the pole is; but they replaced it with a blinker." Then came an objection: "That is objected to as incompetent, irrelevant and immaterial; no part of this case." By the court: "Overruled." "Q. What is there now? A. An electric blinker installed January 1961." "Q. Is that a sign with electric flashers when the train approaches the road?" Objection: "Objected to as incompetent, irrelevant and immaterial." The objection was overruled, some colloquy ensued between counsel and the court, but the record shows no answer to the last question.

The defendant predicates error on these questions and answers because, it is urged, evidence of changes in warning signals after an accident is not admissible. Authorities are cited. But for reasons which we shall endeavor to make clear we do not reach the merits of this contention. No objection was made to the answer "No, the pole is; but they replaced it with a blinker," until after the answer was in. Granted that counsel may have been surprised by the answer, which might not have been anticipated from the question, the remedy was nevertheless by motion to strike. An objection lodged after answer is not sufficient. Hamdorf v. Corrie, 251 Iowa 896, 903, 101 N.W.2d 836, 840, and citations.

Further, another question "What is there now?" was answered without objection "An electric blinker installed January 1961." Since the fact of replacement was thereby in the record at one point without objection, no prejudicial error re-

sulted. Witt v. Town of Latimer, 139 Iowa 273, 277, 117 N.W. 680, 682; Sylvester v. Town of Casey, 110 Iowa 256, 261, 81 N.W. 455, 457.

 Again, the objection lodged was insufficient to call the court's attention to the exact point now urged by the defendant. The reason now given why the evidence of changes in the warning signal was inadmissible is not so obvious that the trial court could have been expected to know the real basis for the objection. As we said in Evers v. Flindt, 193 Iowa 557, 560, 187 N.W. 484, 485: "A sweeping objection in general and indefinite terms is not to be made use of as a mere dragnet or screen for specific objections held in mental reservation by counsel, to be brought to light only when the case has become the subject of appellate jurisdiction." See also Ferris v. Riley, 251 Iowa 400, 408, 409, 410, 101 N.W.2d 176, 180, 181, 182, where there is a considerable discussion of the point and several other authorities are cited.

It is apparent here that if the testimony offered was not admissible, it was because it was incompetent. But testimony may be incompetent for almost innumerable reasons. It may be, as is suggested in Evers v. Flindt, supra, that counsel has some definite measure of incompetency in mind but prefers to keep the real basis as a mental reservation for use in case of an adverse result; or it may also happen that he does not like the question and the anticipated answer, he may feel that for some reason not immediately coming to mind it is improper, he thinks something is wrong but at the moment is unable to say exactly what it is, and so uses the stock objection as a catch-all to cover all possible valid grounds of complaint. In either event fairness to the trial court compels the holding that no substantial question of error results. Trial courts have enough difficult problems confronting them without being required to guess as to what particular ground of incompetency counsel conceives may be present.

We find no error.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting, and SNELL, J., who takes no part.