**Helen E. GANT, Appellant-Plaintiff,**

v.

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellee-Defendant.**

**No. 20060.**

United States Court of Appeals, Eighth Circuit.

Dec. 3, 1970.

Leo Ballard, Des Moines, Iowa, for appellant-plaintiff.

Frank W. Davis, Des Moines, Iowa, for appellee-defendant.

Before MATTHES, Chief Judge, HEANEY, Circuit Judge and VAN PELT, Senior District Judge.

VAN PELT, Senior District Judge.

Plaintiff filed suit in the Polk County, Iowa District Court to recover for injuries suffered when a car owned and driven by her husband, in which she was riding, collided with the caboose of defendant's train at a country railroad crossing. Defendant removed the case to federal court on diversity grounds.[1]

At the close of plaintiff's case, and again at the close of all of the evidence, defendant moved for a directed verdict. Each motion was denied. Only one specification of negligence was submitted to the jury. It pertained to the adequacy of the warning devices at the crossing.[2] A verdict was returned for plaintiff in the sum of $22,648.18.

Judge Stephenson granted a motion for judgment notwithstanding the verdict.[3] The sole issue on this appeal is whether the evidence was sufficient to generate a jury question. We hold it was not, and affirm.

Plaintiff was a front seat passenger in a 1964 Ford driven by her husband, which collided with the caboose of a moving freight train of defendant at a

---

1. 28 U.S.C.A. § 1441.

2. The trial court in instruction seven sets the issue:

   "Plaintiff alleges that defendant's conduct at the time and place in question was negligent in that it failed to give adequate warning of the presence of the train on the crossing, which crossing was such as to call for an additional signal such as flashing lights and a bell or gong.

   "In determining the adequacy or inadequacy of the warning devices at the crossing in question, you should take into consideration the kind of warning device maintained at the crossing consisting of the cross-buck, the warning devices maintained on the train when approaching the crossing, consisting of the whistle and bell, and the utilization of such devices by the defendant when approaching the crossing in question. You may also consider the approaches to the crossing, the condition of those approaches, the obstructions, if any, to the view of the crossing and tracks to the traveler, the location and amount of traffic traversing said crossing, diverting circumstances or the lack thereof and any other facts or circumstances which in the exercise of ordinary care for the protection and safety of travelers would require more adequate signal devices.

   "You are instructed that a railroad company is not required to install flashing lights and a bell or gong at every railroad crossing. Under ordinary conditions, the presence of a moving railroad car upon a crossing is adequate notice to a motorist approaching the crossing, so that the railroad need give no additional notice or warning of the danger. In this respect the defendant was not negligent in failing to provide flashing lights and a bell or gong unless the crossing was so unusually hazardous as to require such warning devices; that is, more hazardous than the ordinary railroad crossing on the streets, roads and highways of this state. In determining whether the crossing was unusually hazardous, you may consider the surrounding circumstances shown by the evidence, such as the amount and character of vehicular and other travel over the crossing; the extent and character of train movement; the character of the highway and crossing itself, including obstructions and limitations on visibility, if any; and the adequacy or inadequacy of the warning devices at the crossing in question. If you find that the crossing was more than ordinarily hazardous and in the exercise of reasonable care for the protection and safety of travelers upon the highway flashing lights and a bell or gong, in addition to the warning devices in existence, ought to have been provided, the defendant railroad in failing to do so, was guilty of negligence. On the other hand, the defendant was not negligent in failing to provide flashing lights and a bell or gong if the crossing was no more than ordinarily hazardous."

3. Chief Judge Stephenson held "that the crossing in question as a matter of law was not so extraordinarily hazardous as to require other than the standard warning device, consisting of the cross-buck, then in place. * * * It was an ordinary railroad crossing, typical of thousands of others that exist in this and other states." Gant v. Chicago and Northwestern Railway Co., 306 F.Supp. 325, 326 (S.D.Ia.1969).

railroad crossing about one mile west of West Des Moines, Iowa, a city of 17,000. There is a town of 3,000 six miles west.

The collision occurred on December 6, 1967 at approximately 10:30 P.M. The Ford was proceeding in an easterly direction on Ashworth Road. The railroad tracks cross Ashworth Road at approximately a 45° angle. The train was traveling from the northwest toward the southeast.

Ashworth Road has a blacktop surface, 22 feet wide, with narrow shoulders. It is uphill both east and west of the crossing for a distance in excess of 500 feet.

The trial court found that the terrain was comparatively level, with less than a 2% grade for a distance of 400 feet to the west of the crossing (a witness testified 1.75%). The view was unobstructed for a distance of approximately 980 feet west of the crossing and there were no trees, brush or buildings obstructing the view.

The only signs near the crossing are cross bucks and a sign stating the direction to the nearby interstate highway. The first warning sign was 670 feet from the crossing. The cross bucks had lettering saying "Railroad Crossing" and were reflectorized so that if light is thrown against them the letters reflect back.

There were no lights at the crossing. There were no lights in or on the caboose. It did have reflectorized metal markers on the rear.

Plaintiff's husband was aware of the railroad crossing and knew there were railroad tracks there. In November and December, 1967, he had had other occasions to traverse this crossing and highway after dark. For six years he had made the trip he was making at the time of the collision once a week and about half the time used Ashworth Road. He was familiar with both the location of the railroad crossing and the approach to it on the highway.

The night was very dark. It had been raining and drizzling. The street surface was wet. The car windows were up. The windshield was clear. It was not necessary to use the windshield wipers. With the high beams on the driver could see objects for a distance of 500 feet or more. He was driving around 45 or 50 miles per hour. He didn't hear a bell or whistle but could have if there had been one. It was agreed that the engineer, if called as a witness, would testify that the train's speed was constant and at the time of the collision was 25 miles an hour; that he commenced sounding the whistle and ringing the bell at the whistling post located approximately 1300 feet north of the crossing and continued until the engine had passed over the crossing; that the headlight of the engine was burning on bright beam.

It was further agreed that the conductor, if called as a witness, would have testified that the train consisted of an engine, 33 cars and a caboose. It appears that the caboose which was struck just beyond the center toward the front, was derailed.

While there is no evidence as to the length of the train, plaintiff contends in her resistance to the motion for judgment notwithstanding the verdict that the engine headlight was approximately one-half mile past the crossing when the Ford struck the caboose.

The law is clear that this court must view and consider the evidence in the light most favorable to the plaintiff, and afford her the advantage of every fair and reasonable inference to be drawn therefrom. Schneider v. Chrysler Motors Corp., 401 F.2d 549 (8th Cir. 1968); Thompson v. Lillehei, 273 F.2d 376 (8th Cir. 1959). It is axiomatic that the substantive law of Iowa is controlling. We therefore review the Iowa cases.

In Wickman v. Illinois Central R.R. Co., 253 Iowa 912, 114 N.W.2d 627 (1962), plaintiff's decedent was killed when the gravel truck which he was driving collided with defendant's freight train at a country railroad crossing. The crossing was guarded by the ordinary cross buck warnings. There was a

grove of trees located in the northwest corner of the intersection which shut off a view of the traffic approaching on the tracks from the north until a point about seventy feet from the crossing. The court held that it was a jury question as to whether the crossing was so extraordinarily hazardous as to call for more than the statutory minimum warning requirements. Before reaching this result, however, the court noted certain rules governing such a case. Because they are controlling here, we quote at length.

"Some principles are well settled. One is that a railroad company is not required to install a signaling device or station a flagman at every railway crossing. Glanville v. Chicago, R. I. & P. R. Co., 190 Iowa 174, 180, 180 N.W. 152, 155. Another holds that the statutory requirements for warnings at railway crossings, as the cross bucks, ringing the bell and blowing the whistle, are minimum only; and that conditions may exist which require more. Russell v. Chicago, R. I. & P. R. Co., 249 Iowa 664, 668, 86 N.W.2d 843, 845, 846, 70 A.L.R.2d 927; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 360, 30 N.W.2d 120, 122.

"A third principle, elementary of course, is that in this class of cases our duty is not to decide whether the crossing in question was in fact extraordinarily hazardous so that some warning beyond the statutory requirements was called for, but only to say whether there was substantial evidence from which a jury might so find. Rosin v. Northwestern States Portland Cement Co., supra, loc. cit. 252 Iowa [564,] 574, 107 N.W.2d [559,] 565; Russell v. Chicago, R. I. & P. R. Co., supra, loc. cit. 249 Iowa 671, 86 N.W.2d 847. *The general rule also is that whether the condition of a crossing, with its surroundings, is such as to call for additional warning devices, or flagmen, is a question for the jury unless reasonable minds could reach only one conclusion from the evidence.* Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1196, 91 N.W.2d 380, 386; Strom v. Des Moines Central Iowa Ry. Co., 248 Iowa 1052, 1068, 1069, 82 N.W.2d 781, 790, 791, and citations." (emphasis added) 253 Iowa at 917, 114 N.W.2d at 629, 630.

■ In the early case of Glanville v. Chicago, R. I. & P. Ry. Co., 190 Iowa 174, 180 N.W. 152 (1920), the court noted, in considering whether the warnings employed at any railroad crossing are sufficient, that, in order to authorize a jury to find negligence in not taking such additional precautions,

" '[t]here must be something in the configuration of the land, or in the construction of the railroad, or in the structures in the vicinity, or in the nature or amount of the travel on the highway, or in other conditions, which renders the ringing of the bell and the sounding of the whistle inadequate properly to warn the public of danger.' " 190 Iowa at 181, 180 N.W. at 155.

The court in *Glanville* further delineated the circumstances in which a jury would be warranted in concluding that the statutory minimums are insufficient:

" '[I]t must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much traveled one [4] and the noise of approaching trains is rendered indis-

---

4. In Russell v. Chicago, R.I. & P. Ry. Co., 249 Iowa 664, 86 N.W.2d 843 (1957), the court stated that "[t]he amount of traffic does not seem important upon the question of a hazardous condition except that, if such a condition does exist, more travelers upon the highway will be endangered. If it is there, it is just as dangerous to those who do use the road as though their numbers were legion." *Id.* at 668, 86 N.W.2d at 846.

tinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or by reason of some such like cause; * * *.' " 190 Iowa at 180, 180 N.W. at 155, citing, Grand Trunk R.R. Co. of Canada v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L. Ed. 485 (1892).[5]

This case has been cited many times and appears still to be a correct statement of the Iowa law.

Plaintiff asserts that the evidence in this case warranted submission to the jury of the issue concerning the extraordinarily hazardous nature of this particular crossing because

(1) The road was a major traffic artery, near a populous city, and 400 feet from an exit to the Interstate highway;

(2) The night was extremely dark, the train was unlighted and did not form a silhouette, as no cars were coming from the opposite direction;

(3) The crossing was totally unilluminated;

(4) The road was wet, and the pavement thus absorbed the car's headlights, rather than reflected them;

(5) The tracks crossed at an angle and were located in a spot between two hills, thus preventing a "shuttering" effect from the car's headlights;

(6) The whistle and bell of the train, if sounded, were discontinued at a point when the car was nearly one-half mile from the crossing;

(7) A wind was blowing away from the car, thus further inhibiting any sound from the train;

(8) The background was black and nondistinctive in nature.

Plaintiff further asserts that the statutory minimum warnings, coupled with the train's presence on or near the crossing, are not conclusive as to the hazardous nature of the crossing itself.[6]

The controlling principles enumerated above lead us to conclude, however, that the lower court was correct in granting defendant's motion for judgment notwithstanding the verdict, and that the crossing was not so extraordinarily hazardous as a matter of law as to require other than the standard warning device consisting of the cross buck. The physical aspects of the crossing above set forth can lead to no other result.

In each of the cases relied upon by plaintiff, some physical factor or some type of evidence was present which is conspicuously absent in the instant case. In Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120 (1947), the evidence viewed in the light most favorable to the plaintiff there, showed that prior to the accident a flagman with a lantern had been present to warn approaching traffic when standing trains were on the crossing. No flagman was present at the time of the accident. This evidence was admitted to show a recognition by the railroad company that a hazardous condition did exist. In addition, evidence rejected at trial, later held to be admissible, showing other accidents and near-accidents at the crossing, was used ostensibly for the purpose of showing the ultrahazardous nature of the crossing.

In Russell v. Chicago, R. I,. & P. Ry., Co., 249 Iowa 664, 86 N.W.2d 843 (1957), the crossing was equipped with an electric signal warning device. The evidence, when viewed in the light most favorable to the plaintiff, indicated that

---

5. It is important to point out that these conditions are disjunctive, rather than conjunctive. Therefore, if any one of them is found to exist, it might be sufficient to require submission to the jury. Wickman v. Illinois Central Ry. Co., *supra.*

6. The trial court noted that "[t]he moving train was itself a significant warning to approaching motorists. See, Linquist (sic) v. Des Moines Union Ry., 239 Iowa 356, 369, 30 N.W.2d 120 (1947)." 306 F.Supp. at 327.

the device was not working at the time of the accident. The court stated that "[t]he fact that the railroad company equipped the crossing with this warning device shows its recognition that without it the crossing was hazardous; * * * *" 249 Iowa at 670, 86 N.W.2d at 847.

In Plumb v. Minneapolis & St. Louis Ry. Co., 249 Iowa 1187, 91 N.W.2d 380 (1958), the defendant's tracks appeared to be partly buried, as they did not cross the road on an elevated grade. Other tracks at that crossing were plainly raised and visible from the road. The signs warning of defendant's tracks were faded and weatherbeaten, and difficult to observe. A bank of earth partly obstructed a traveler's view of the tracks, when approaching from the south, until within twenty-five feet of defendant's tracks. Additionally, evidence of other accidents or near-accidents was introduced.

In Rosin v. Northwestern States Portland Cement Co., 252 Iowa 564, 107 N.W.2d 559 (1961), there were obstructions to plaintiff's clear view of the track and train in the form of trees, brush, and tall corn, which had since been cleared away.

In Wickman v. Illinois Central Ry. Co., *supra*, the evidence showed the view to the west for traffic coming from the north was seriously obstructed. It was, for all practical purposes, a blind crossing until approaching traffic was within less than seventy feet. Additionally, the road was well-traveled and was rough. A short distance back from the crossing there were several chuck holes requiring more than usual attention to the driving of the motor vehicle.

■ In the instant case, there is no evidence that a flagman had previously been used or that a warning device had previously been installed at this crossing. There is no evidence that such have since been employed. The evidence in this record does not show any other accidents or near-accidents at this crossing. The evidence does not indicate that the tracks were partly buried, that the sign was not visible, or that the view of the tracks was in any way obstructed by objects. Indeed, it is established that all four quadrants of the intersection just west of the crossing, are open fields, and that there are no obstructions or buildings within 500 feet of the crossing.

It is true that the tracks were in a slight depression. But that fact cannot be held of any consequence here because of the slight, almost insignificant grades on either side of the tracks. The tracks were not buried. At most, the freight cars and the caboose were unlighted and everything was black. This would not make the crossing extraordinarily hazardous. If it was, then the railroad company would be required to install a signalling device at every crossing on blacktop roads. Neither the Iowa Legislature by its enactments nor the Iowa courts by decision have made such a requirement.

The tracks cross a country road at a point between a city of 3,000 population and the city of West Des Moines of 17,000 population. There are 21 houses located along Ashworth Road within .9 of a mile to the west of the crossing, 6 being on the north side of the road and 15 on the south side. Five of the houses on the north side are within .4 of a mile of the crossing. They do not average one house to a city block of 300 feet. In the mile to the east of the crossing there are only 10 houses near the road, located 5 on the north side and 5 on the south side. While the cities near the crossing may be populous, the area immediately surrounding the crossing itself is not. This crossing is not such as *Glanville, supra,* described as "in a thickly populated portion of a town or city" and is not comparable to such a situation.

While not specifically raised, there is an inference in appellant's argument that the crossing here involved was extraordinarily hazardous because of the length of the train. While it is apparent that a train consisting of an engine, caboose and 33 cars is not a long train, and would not be as long as a half mile,

the distance suggested in appellant's motion, it is also clear that a crossing is not to be considered hazardous one day and not hazardous the next, based solely upon the length of the train using the crossing. This train could not have occupied this crossing more than 60 seconds from the time the engine crossed Ashworth Road until the caboose was struck by the Ford. The length of the train was not claimed as a ground of negligence. Its presence on the crossing was in no manner illegal. Again, neither the Iowa Legislature nor the Iowa court has ever considered the length of a train in listing conditions which would make a crossing extraordinarily hazardous. We will not do so here.

This court in Lemke v. Chicago, R. I. & P. R. Co., 195 F.2d 989 (8th Cir. 1952) aptly stated:

> "The Supreme Court of Iowa has in effect held that it is always train time at a railroad crossing and it should be expected that a train might be passing over a known crossing. High v. Waterloo, C. F. & N. Ry. Co., 195 Iowa 304, 190 N.W. 331; Hitchcock v. Iowa Southern Utilities Co. [233 Iowa 301. 6 N.W.2d 29], supra. A railroad crossing is in itself a warning of danger if it is visible or its location known, * * *." *Id.* at 991.

█ The duty to be constantly on guard at a railroad crossing is not limited solely to the driver, but applies with equal force to the passenger. It is of little consequence that the driver and passenger in this case are husband and wife. The Iowa Supreme Court in Hutchinson v. Sioux City Service Co., 210 Iowa 9, 230 N.W. 387, 389 (1930), quoting Beemer v. Chicago, Rock Island & Pacific Railway Co., 181 Iowa 642, 162 N.W. 43, 44 (1917), observed:

> " 'It is urged by the appellant, however, that the negligence of the husband, if any, could not be imputed to the wife, and this may be conceded. The fact remains, however, that the wife, *seated beside her husband on the front seat, and with the same knowledge of the approach to the crossing and the danger thereof, was as much under the duty of lookout and discovery as he was.*' (The italics are ours.)"

We conclude, as did Judge Stephenson, that this crossing was not extraordinarily hazardous and, under the Iowa cases, defendant was not at fault.